**UNITED STATES of America,**
**Appellee,**

v.

**Darnell F. MOSBY, Appellant.**

**No. 19506.**

United States Court of Appeals,
Eighth Circuit.

Feb. 25, 1970.

---

Michael N. Newmark, of Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and LAY and HEANEY, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This is an appeal by defendant Mosby from his conviction by a jury upon each of two counts of an information charging violation of 26 U.S.C.A. § 4704(a) and the resulting concurrent sentence of ten years imposed upon each count.

Count One charges in substance that defendant Mosby on October 19, 1967, in the City of St. Louis, Missouri, sold, dispensed and distributed heroin other than in or from the original stamped package containing the same. Count Two makes the same charge with respect to an October 21, 1967, transaction.

The Government's evidence shows that each of the charged sales and distributions was made by the defendant to Sam Miller, a paid government informer. Miller, a narcotics addict, had met defendant while both were serving prison sentences in 1964. They had seen each other from time to time since that date. Defendant as a witness testified that he was an addict and that Miller had sold him narcotics on a number of occasions and that he and Miller had used narcotics together, but that the defendant had never sold any narcotics to Miller or to anyone else.

The Government's case consists of testimony by narcotics agents Patch and Hoerner on the sale issue and the testimony of the Government chemist to the effect that the specimen sent him for examination contained heroin. Patch and Hoerner testified that in conformity with the usual practice in such situations they had searched informer Miller and found he had no narcotics on him. They supplied him with Government money to make a purchase and kept him under surveillance at all times. From a distance of one hundred to one hundred and fifty feet they saw Miller pass something to the defendant and later saw defendant pass something to Miller, and that Miller came in contact with no one other than the defendant. Miller returned to the agents and delivered a package containing capsules which were properly identified and preserved and found by the Government chemist to contain heroin. Miller was searched upon his return and found to be without money.

The informer Miller did not appear as a witness. After the Government had rested, the record shows the following proceedings took place at the bench out of the hearing of the jury:

"MR. NEWMARK: I would like to move that the government be required to put Mr. Sam Miller on the stand so that he can be inquired of for the purpose of entrapment.

"THE COURT: Be overruled. If you want to put him on, you can put him on. He's here, isn't he?

"MR. MARTIN: No, your Honor, he is not here and we don't know where he is.

"THE COURT: Very well."

Included in the motion for acquittal was the statement that the accused had not had an opportunity to examine the informer. Defendant's motions for acquittal at the close of the Government's case and at the close of all of the evidence, upon the ground that the evidence was insufficient to support a conviction, were overruled.

Defendant urges that he is entitled to a reversal for the following reasons:

I. Denial to defendant of a fair trial by reason of the court's failure to require the Government to produce informer Miller or to demonstrate a good faith effort to produce Miller.

II. Error in overruling defendant's timely motions for acquittal.

III. Compliance with § 4704(a) forces defendant to incriminate himself in violation of his Fifth Amendment privilege against self-incrimination.

IV. Violation of due process by virtue of the fact that the Government prohibited defendant by its regulations from complying with the statute under which he was convicted.

We hold that the trial court did not commit prejudicial error in any of the respects claimed. We shall discuss the errors asserted in the order above stated.

## I.

The trial court under the facts before it did not abuse its discretion in denying defendant's request that the Government be required to call Miller as a witness. The entire record on this issue has heretofore been set out. There is nothing to indicate that the failure by the Government to call Miller was induced by any improper motive or that the Government had knowledge that Miller might give unfavorable evidence.

Absent unusual circumstances such as knowingly concealing evidence favorable to a defendant, the Government has a wide discretion with respect to the witnesses to be called to prove its case. The government is not ordinarily compelled to call all witnesses competent to testify including special agents or informers. Clingan v. United States, 5 Cir., 400 F.2d 849, 851; United States v. Holiday, 2 Cir., 319 F.2d 775, 776; Rivera v. United States, 9 Cir., 318 F.2d 606, 607. See 23 C.J.S. Criminal Law § 1017. There were no unusual circumstances here.

Defendant places considerable reliance upon Chief Justice Warren's separate concurring opinion in Lopez v. United States, 373 U.S. 427, 441, 83 S.Ct. 1381, 10 L.Ed.2d 462. However, the dictum relied upon was not adopted by the Court.

The prosecutor's statement that he did not know Miller's whereabouts is a bald conclusory statement. However, it was in no way challenged by the defendant nor was any effort made to elicit information as to the extent of the search. Moreover, the defendant was well acquainted with Miller. He made no statement that he was unable to locate Miller nor is there any showing what Miller's testimony might be. Defendant made no effort to obtain a subpoena for Miller or to obtain a continuance or a mistrial.

The stated need for Miller's testimony was to support an entrapment defense. Defendant as a witness flatly denied selling or delivering narcotics to Miller at the time charged or at any other time. Defendant on cross-examination relating to narcotics, after stating that he had on a number of occasions purchased narcotics from Miller, testified:

"Q Well, did you ever let him have some when he ran out?

"A No, I didn't.

"Q Did he ever come to you and tell you that he needed some and ask you to give him some or sell him some?

"A No, he didn't.

"Q How many years have you two known each other?

"A I would imagine right at four years.

"Q About four years, and during this same four-year period he never did run out and ask you for some?"

"A No, he haven't (sic)."

Defendant as a witness had a full opportunity to offer evidence of entrapment. He did not do so. Instead, he

made an unequivocal statement that he had made no sales to Miller.[1]

Defendant, upon the record before us, has failed to demonstrate that the trial court abused its discretion or committed error in refusing to order the Government to produce Miller as a witness. See Kauffmann v. United States, 8 Cir., 414 F.2d 1022.

## II.

■ In order for the Government to sustain the conviction of the defendant under the information in this case, the following elements must have been proven: (1) Selling, distributing or dispensing (2) narcotic drugs (3) not in or from an original stamped package. Our examination of the record satisfies us that there is substantial evidence to support the jury verdict and hence no error was committed in denying the defendant's motions for acquittal.

The evidence adequately demonstrates that there was a sale or distribution by defendant to the informant Miller. The evidence discloses that the informant was given government money and was searched by government agents for heroin before he made contact with the defendant. They found no heroin. The defendant's contention that the search lacks details is without merit. Details of the search could have been obtained by the defendant through cross-examination of the agents. There is also adequate evidence to support a finding that the governmental agents were able to make continual observation of the informant and see an object passing between the informant and the defendant. The evidence properly demonstrates that when the informant returned, the agents found narcotic drugs in his possession but no government money. The Government's evidence here follows the pattern of evidence found to be sufficient to support a conviction in many narcotic cases. See Byrth v. United States, 8 Cir., 327 F.2d 917.

There is also substantial evidence to support a finding that the drug purchased from the defendant in this case was a narcotic drug within the meaning of § 4704(a). A government chemist testified that the drug sold by the defendant was examined and found to be heroin, a narcotic drug. See 26 U.S.C.A. § 4731; Naval v. United States, 9 Cir., 278 F.2d 611.

It is also clear from the evidence that the package containing the heroin which was purchased from the defendant was not stamped and therefore did not comply with § 4704(a).

## III.

■ Defendant contends that his conviction under § 4704(a) is a conviction under an inseparable part of a statutory scheme which requires defendant to register and thereby incriminate himself in violation of his privilege against self-incrimination. Such contention lacks merit.

Section 4704(a) makes it unlawful to "purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; * * *." The stamp mentioned in the above statute is placed on the package by those who qualify as registered dealers and pay the proper tax. 26 U.S.C.A. §§ 4721, 4722, 26 C.F. R. §§ 151.130, 151.41, 26 U.S.C.A. § 4771. This section does not require the person selling, dispensing, distributing or purchasing to put the stamp on the package. This section only requires that a person buy narcotics from authorized dealers and sell it in or from the original package. This provision is designed to

---

1. A number of courts have held that the defense of entrapment assumes that the act charged was committed and where defendant denies that he made the sale charged, the defense is not available. Longmire v. United States, 5 Cir., 404 F.2d 326, 327; Ortiz v. United States, 9 Cir., 358 F.2d 107, 109. In our present case, as in Kauffmann v. United States, 8 Cir., 414 F.2d 1022, 1025, we believe it unnecessary to pass upon such issue to decide the case before us. See Kibby v. United States, 8 Cir., 372 F.2d 598, 600.

allow only certain authorized persons to handle drugs and keep illicit drugs from the market by requiring that drugs be sold in or from the package obtained from the authorized dealer.

In order to determine whether § 4704 (a) violates the defendant's privilege against self-incrimination, we must determine whether compliance with this provision would subject the defendant to a "real and appreciable" risk of criminal liability. Leary v. United States, 395 U.S. 6, 13, 89 S.Ct. 1532, 23 L.Ed.2d 57. We hold that the statute does not violate the privilege against self-incrimination because in order to comply the defendant is not required to give incriminating testimonial disclosures against himself. A person can comply by buying narcotics from authorized persons and selling it in or from the original stamped package. The fact that no one in the United States is authorized to deal in heroin is of no consequence to the defendant's self-incrimination claim. 21 U.S.C.A. §§ 173, 502, 505.

The Supreme Court in Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283, upheld a conviction under § 4705(a), a closely related statute which proscribes the sale of narcotics except upon written order of the person to whom such drug is sold on a form issued by the Secretary. The Court, after observing that there is no substantial possibility that the buyer could under the regulations obtain an order form, states:

"Prospective buyers who have either failed to register or cannot register because their dealings in the drug are illicit—and petitioner himself strenuously argues that virtually all dealings in heroin are illicit—simply are not among the class of persons to whom sellers are permitted to sell under any condition. When dealing with buyers in this class, the seller faces no risk of incrimination because of § 4705(a) since there will be and can be no order form involved. Confronted with would-be buyers in this class, 'full and literal compliance' with § 4705(a) leaves the seller only one alternative: not to sell."

An analogous situation exists with respect to the § 4704(a) violations here involved. In Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (January 20, 1970), the Court in affirming a § 4704(a) conviction observes:

"All heroin found in this country, is illegally imported. Those handling narcotics must register; registered persons do not deal in heroin and only registered importers and manufacturers are permitted to purchase stamps. For heroin to be found in a stamped package, stamps would have to be stolen and fixed to the heroin container and even then the stamps would immunize the transactions in the drug only from prosecution under § 4704 (a); all other laws against transactions in heroin would be unaffected by the presence of the stamps. There can thus be no reasonable doubt that one who possesses heroin did not obtain it from a stamped package."

The constitutional issue is not discussed in depth in *Turner* but the issue of the constitutional validity of the statute was clearly before the Court. The affirmance of the § 4704(a) conviction carries with it a determination that the statute does not violate defendant's privilege against self-incrimination. There is no affirmative evidence that defendant has in any way incriminated himself by reason of the provisions of § 4704(a).

A number of courts of appeals have upheld convictions under § 4704(a) and in so doing rejected the claim of violation of the privilege against self-incrimination. United States v. Walker, 5 Cir., 414 F.2d 876; United States v. Castro, 1 Cir., 413 F.2d 891. This court has also so held. United States v. Williams, 8 Cir., 421 F.2d 529; United States v. Crockett, 8 Cir., 421 F.2d 649.

## IV.

■ Lastly, defendant makes the additional attack upon the constitutional validity of § 4704(a) on the ground that the regulations under the Narcotics Act made it impossible for him to comply with the statute. He states that before obtaining the narcotics legally he would have to register and that he could not do so because 26 C.F.R. § 151.24 limits registration to persons legally qualified to engage in the activities for which registration is sought under the laws of the jurisdiction in which he is operating, and that § 195.040, Missouri Revised Statutes, 1959, V.A.M.S., provides that no addict or person not of good moral character can be licensed in Missouri, and that defendant's four admitted felony convictions and admitted addiction would have prevented registration.

The defendant's assertion does not adequately state the operation of § 4704 (a). As previously discussed, a person may comply with § 4704(a) without registering and therefore 26 C.F.R. § 151.24 and § 195.040 Missouri Revised Statutes do not prevent the defendant from complying with the statute.

■ Twenty-six C.F.R. § 151.24 and § 195.040 Missouri Revised Statutes do prevent the defendant from becoming a licensed dealer in narcotic drugs. We find the statute authorizing the regulations to be a valid exercise of congressional power, meeting the requirements of substantive due process. It is quite reasonable for Congress to authorize only certain persons as handlers of narcotic drugs and certainly regulation of drug handling by addicts or former addicts is proper.

A careful review of all the contentions made by the defendant in the light of the record before us convinces us that the court committed no prejudicial errors.

The judgment is affirmed.