**UNITED STATES of America,
Appellee,**

v.

**Freddie GOLDEN, Appellant.**

**No. 20226.**

United States Court of Appeals,
Eighth Circuit.

Jan. 25, 1971.

Rehearing En Banc Denied and Rehearing Denied March 29, 1971.

Charles W. Anderson, Minneapolis, Minn., for appellant.

Neal Shapiro, Asst. U. S. Atty., Robert C. Renner, U. S. Atty., D.Minn., Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT and HEANEY, Circuit Judges, and HANSON, District Judge.

HANSON, District Judge.

This is an appeal by defendant Golden from a jury conviction upon each of two counts of an indictment charging violation of 26 U.S.C.A. § 4704(a) and the resulting concurrent sentence of ten years imposed upon each count.

Count One charges in substance that defendant Golden on January 15, 1969, in the City of Minneapolis, Minnesota, sold, dispensed and distributed heroin other than in or from the original stamped package containing the same. Count Two makes the same charge with respect to a January 16, 1969, transaction.

The Government's evidence shows that each of the charged sales and distributions was made by the defendant to John Walker, a paid government informer, and Tyrone V. Yarn, an undercover narcotics agent. Walker was a narcotics addict and a previous felon.

The Government's case consisted of testimony by narcotics agents Yarn and Ripley on the sale issue and the testimony of the Government chemist to the effect that the specimens sent him for examination contained heroin. Yarn and Ripley testified in substance that on January 15, 1969, along with another special agent, Edgar Muhlhauser, they met a government informer, John Walker, who was to assist in a narcotics purchase from defendant Golden. Walker was searched to determine the presence of any drugs or money. No drugs or money were found. Walker was given $40 of government funds to purchase narcotic drugs from the defendant. The three special agents and Walker then drove to the vicinity of defendant's residence. Agent Yarn and the informant Walker were admitted to the residence and observed the defendant present. Golden asked the informer what he wanted. Yarn then gave Walker an additional $40 of government money in defendant's presence to make a purchase of "eight things". Yarn testified that he saw defendant give Walker eight capsules out of a pill bottle with no stamp in exchange for the money. Immediately after departing the residence, Walker gave Yarn the eight capsules which were properly identified and preserved and later found by the government chemist to contain heroin. Walker was again searched and found not to have any drugs.

On January 16, 1969, agents Yarn and Muhlhauser again met with the informer Walker and made arrangements for a

second purchase of narcotics from defendant. Again the usual procedures of searching Walker were employed and Yarn accompanied Walker to the defendant's residence where defendant sold them ten capsules which were later found to contain heroin. Similar procedures were utilized in preserving the evidence as had been employed the previous evening.

Special Agent Yarn made an in-court identification of the defendant. The informer Walker did not appear as a witness.

Defendant urges that he is entitled to reversal and vacation of his conviction because his constitutional guarantee of due process was denied. Defendant predicates his denial upon the cumulative effect of the government's lack of prosecution and the government's failure to call as their witness the paid informant. We hold that the defendant was not prejudiced in any of the respects claimed and affirm the conviction.

The offenses for which defendant was convicted were committed on January 15 and 16, 1969. The indictment was returned on October 16, 1969, and defendant was arrested on November 24, 1969 at his home. Thus, some nine months elapsed between the commission of the offenses and the indictment. The arrest was made some ten months after the commission of the offenses and the trial was a little over one year from the time of the offenses charged. It is this delay that defendant challenges as violative of the right to due process guaranteed by the Fifth Amendment to the United States Constitution.

■ We start with the proposition outlined in Terlikowski v. United States, 379 F.2d 501 (8th Cir. 1967), that a delay between the offense and indictment, if prejudicial, can constitute a denial of due process. In determining the prejudicial effect of a pre-indictment delay, the governing standard is whether the delay has impaired the defendant's ability to defend himself. *E.g.*, United States v. Ewell, 383 U.S. 116, 86 S.Ct.

773, 15 L.Ed.2d 627 (1966); Hodges v. United States, 408 F.2d 543 (8th Cir. 1969); United States v. Deloney, 389 F.2d 324 (7th Cir. 1968); United States v. DeLeo, 422 F.2d 487 (1st Cir. 1970); Bradford v. United States, 413 F.2d 467 (5th Cir. 1969).

■■ It is well established law that a defendant claiming impairment of his defense by delay must show specifically and not by mere conjecture wherein his defense has been impaired. Hodges v. United States, *supra*; United States v. Ewell, *supra*; United States v. Hammond, 360 F.2d 688 (2d Cir. 1966). Thus, a mere claim of general inability to reconstruct the events of the period in question is insufficient to establish the requisite prejudice for reversal on denial of due process. United States v. Ewell, *supra*; Dancy v. United States, 129 U.S.App.D.C. 413, 395 F.2d 636 (1968); United States v. Hammond, *supra*. Nor may a defendant's claim of prejudice be insubstantial, speculative, or premature. Peculiar circumstances of the delay other than a general inability to recollect or reconstruct events must be shown. Dancy v. United States, *supra*; United States v. Hammond, *supra*.

■ In Hodges v. United States, 408 F.2d 543 (8th Cir. 1969), the Court speaking through then Judge Blackmun, now Justice Blackmun, concluded that to establish a claim of impairment, the defendant must point to specific evidence which has actually disappeared or been lost or witnesses known to have disappeared.

The indictment charged two offenses, one occurring on January 15th and one on January 16th, 1969. It is readily apparent in reviewing the trial transcript that defendant was in no way prejudiced as to recalling his activities on January 15, 1969. Defendant, his wife, and two sisters-in-law each testified that on that date a birthday party was being held in the Golden home. Each witness went into detail as to the particulars of the party and who was present. Defendant concedes in his brief that he incurred no

prejudice from inability to defend himself in regard to the January 15th charge.

Defendant's contention of prejudice is more specifically directed to the evening of January 16th. Defendant on appeal asserts a general inability to recall his activities on that date and specifically points to his testimony at trial as establishing the requisite prejudice. We disagree.

Defendant was called and testified on his own behalf. Defendant's attorney on direct examination inquired as to defendant's whereabouts on the 16th:

"Q.  Now, do you recall what you did the next day [16th]?

A.  Well, vaguely. I think I barbecued outside and had some beer and sit [sic] around and drink [sic].

Q.  You were at home?

A.  Yes.

Q.  Now, calling your particular attention to that evening, after supper, do you recall where you went or what you did or who you were with?

A.  I went down to the pool room over on Plymouth and played some pool.

Q.  Do you recall who you may have been with?

  *  *  *  *  *  *

A.  Yes. I think it was Michael and Chuck. We were just sitting around, you know, playing pool, bank—and a bank game lasts a long time, you know, like 20 or 30 minutes for a game to go on, you know, especially if you play good."

On cross-examination the following exchange took place:

"Q.  Mr. Golden, what did you say you did on the 16th of January?

A.  I think I had a barbecue.

Q.  Outside?

A.  Yes.

Q.  On the 16th of January?

A.  Uh-huh.

Q.  That would have been one year and three days ago.

A.  No, not the barbecue outside. I am sorry. I was thinking about— during the 4th of July. I am sorry. That was my mistake there.

Q.  You get January 3rd mixed up with July 4th?

A.  Yeah."

It is highly questionable whether defendant has a plausible claim of prejudice based on an inability to recall events. Although he testified that he vaguely remembered what he was doing on the day of the 16th, which is irrelevant anyway, there is not the same hesitancy in regard to his activity on the evening of the 16th, the time in question. He clearly and unequivocally stated that he was paying bank pool on this evening although he was unsure of with whom.

Furthermore, even assuming a plausible claim of inability to recall events, defendant has failed to show the necessary specific impairment of his ability to defend himself such as actual disappearance of witnesses or other evidence. Hodges v. United States, *supra*; United States v. Ewell, *supra*. The informant Walker was available to testify. As to Sam and Jerry Parker, individuals who allegedly could testify as to defendant's activities on the evening of the 16th, defendant testified that Sam Parker was in a federal institution for drug addicts and that Jerry Parker was "around somewhere". Thus these possible witnesses had not disappeared and their actual unavailability is on this record mere supposition. Neither is there anything in the record to show that Chuck and Michael, defendant's supposed pool partners on the night of the 16th were unavailable or that defendant even wanted them as witnesses.

In short, the only specific claim made by defendant in respect to impairment of his ability to defend himself is the answer about barbecuing outside on January 16th in Minneapolis, Minnesota. We reiterate that a defendant must show more than a general inability to defend himself. Defendant's statements

as to barbecuing are no more than expression of this general inability.

Furthermore, while defendant's answer about barbecuing may have had some impact on his credibility, he has arguably not even established a general inability to recall events since the night of the 16th rather than the day of the 16th was the relevant time in question.

In any event, we find that when viewed in the context of the entire case, this one isolated misstatement, which defendant himself later corrected on cross-examination, does not rise to that level of prejudice required for reversal on the ground of denial of due process.

■ In addition to a pre-indictment delay as potentially violative of a defendant's right to due process predicated on impairment of ability to defend oneself, this Court in Terlikowski v. United States, *supra*, also stated that due process may be denied in cases involving pre-indictment delay where the government had deliberately utilized the delay to strengthen its position by weakening that of the defendant.

Defendant seems to allege a deliberate and ill-motivated delay by the Government in the instant case. Specific reference is made to the Government's response to a bill of particulars as well as the delay itself as evidence of the Government's deliberateness. The request for a bill of particulars was filed by the defendant prior to trial and granted by the district court. The bill of particulars requested the United States attorney to name those persons to whom the alleged sales charged in the indictment had been made. On January 2, 1970, the United States attorney answered that both sales had been made to special agent T. V. Yarn. On January 16, 1970, three days prior to trial, the Government amended the bill of particulars to show that the sale alleged in Count I of the indictment had been made to one John Walker.

We find nothing which would establish that the government's failure to originally name John Walker as a buyer was a deliberate attempt to gain advantage of defendant or was anything more than an honest mistake on the part of the United States attorney. Furthermore, defendant's defense was not weakened by the belated amendment. The trial court offered defendant a continuance and a subpoena to secure Walker, the informer, as a witness but defendant declined to do so. Defendant's assertion of intentional concealment of a witness by the Government, besides being unsupported by the record, is also rendered meaningless since defendant has made no showing wherein his defense was hampered.

As for the delay itself demonstrating improper intentions on the part of the Government, the courts are concerned not only with the delay but also the needs of society. United States v. Ewell, *supra*; Hodges v. United States, *supra*. Agent Yarn testified that the delay was necessitated because he was engaged in a continuing investigation of illegal drug traffic in the Minneapolis area. He also stated that these investigations involved friends of defendant Golden. We are not unmindful of the risks inherent in undercover criminal investigations where informers are employed. Often for reasons of personal safety as well as a complete investigation, delay is of great necessity. United States v. Deloney, *supra*.

■ We, therefore, find that the delay was not deliberately intended to prejudice defendant and, further, that defendant has failed to establish any prejudice resulting from the delay.

Defendant relies heavily on Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965) and Woody v. United States, 125 U.S.App.D.C. 192, 370 F. 2d 214 (1966) for reversal of his conviction. In *Ross* a seven month delay between the alleged offense and indictment on a narcotics charge was held violative of defendant's right to due process. One of the reasons for reversal was the fallibility of the evidence in respect to identification of the defendant as the

person who had sold the drugs. The defendant in *Ross* was identified by uncorroborated evidence of rookie police officers who made their identification solely on notebook descriptions which were inaccurate. The *Ross* court intimated that the preindictment delay itself could have been overridden if the government had presented a stronger case.

In *Woody, supra,* a narcotics conviction was reversed where there was only a four month delay between the alleged offense and the arrest. Judge Bazelon, the writer of the *Ross* opinion, amplified on *Ross* in *Woody*:

> "Our discussion of prejudice in *Ross* and the subsequent Narcotics Delay cases was framed primarily in terms of the ability of the accused to prepare and present a defense at trial. *But the ultimate prejudice that has concerned us in these cases has been the risk of erroneous conviction attributable to the process which led to the verdict of guilt. Delays prior to arrest which hinder or prevent presentation of a defense shackle our system of determining truth through the adversary process. The reliability of the verdict then depends solely upon the quality of the police identification. The more inherently unreliable the method of identification, the more the ultimate prejudice—the risk of erroneous conviction."* 370 F.2d at 216. (Emphasis added.)

The *Woody* court found the same identification problems present in *Ross* and, because of the weakness of the government's case, reversed the conviction.

The rationale of *Ross* and *Woody* is further explained in Dancy v. United States, 129 U.S.App.D.C. 413, 395 F.2d 636 (1968). In *Dancy,* the court upheld a narcotics conviction where the delay between the offense and arrest was four months, identical to the delay in *Woody.* *Ross* and *Woody* were clearly limited to cases involving problems of identification of the defendant. Absent identification problems, the court stated that the only issue in cases involving pre-indictment delay was whether a defendant's ability to defend himself had been impaired.

While this Court has never expressly accepted the reasoning of *Ross* and its progeny, neither have we ever expressly rejected such reasoning. In *Terlikowski, supra,* we found *Ross* inapplicable on its facts. We likewise find *Ross* and its progeny inapplicable to the present case.

The identification of defendant Golden by agent Yarn does not submit to the identification weaknesses inherent in *Ross* or *Woody.* Yarn made two purchases of narcotics from defendant at defendant's home. The purchases were face to face encounters in a lighted room. Yarn had seen pictures of defendant prior to the nights in question. Yarn also made an in-court identification of defendant without having to refresh his recollection in any way. Furthermore, at least one other narcotics agent observed Yarn and the informant enter and leave defendant's house on the dates alleged, thus corroborating Yarn's testimony to that extent.

■ We are, therefore, not confronted with the peculiar problems of identification detailed in *Ross* and *Woody.* We find the identification of defendant Golden by agent Yarn not to possess the prerequisite infirmities necessary to the invocation of the *Ross* result.

■ Defendant Golden also claims prejudice by the Government's failure to call the informant Walker as a Government witness.

As this Court recently stated in United States v. Mosby, 422 F.2d 72 (8th Cir. 1970):

> "Absent unusual circumstances such as knowingly concealing evidence favorable to a defendant, the Government has a wide discretion with respect to the witnesses to be called to prove its case. The government is not ordinarily compelled to call all witnesses competent to testify including special agents or informers." 422 F. 2d at 74.

Similar reasoning has been followed in numerous other cases. *See, e.g.,* Clingan v. United States, 400 F.2d 849 (5th Cir. 1968); United States v. D'Angiolillo, 340 F.2d 453 (2d Cir. 1965); United States v. Holiday, 319 F.2d 775 (2d Cir. 1963). As we have heretofore indicated, we find no such unusual circumstances here.

Although the Government supplied defendant with the informer's name belatedly and were unable to inform defendant of Walker's present whereabouts, we do not find the Government intended to conceal favorable evidence nor do we find that defendant was prejudiced. Defendant through his own efforts located the informer who was incarcerated at the Minnesota State Penitentiary in Stillwater. The trial court, more than once, and even at the conclusion of all the testimony, offered to issue a subpoena and allow a continuance so that defendant could call Walker as a witness if he so desired. The offer was declined. Further, never did defendant ever request a continuance.

Defendant relies upon former Chief Justice Warren's separate concurring opinion in Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). As stated by Judge Van Oosterhout in the *Mosby* decision, the dictum relied upon was not adopted by the Supreme Court.

Defendant also places reliance on cases where a defense of entrapment is asserted and the Government fails to call informers who are crucial to that issue. United States v. Clarke, 220 F.Supp. 905 (E.D.Pa.1963). Defendant Golden has not made any such claim although having full opportunity to do so. Defendant's defense was that he had not made the sales in question. A number of courts have held that if a defendant denies the charged sales, entrapment is not an available defense. Clingan v. United States, *supra*; Ortiz v. United States, 358 F.2d 107 (9th Cir. 1966); Longmire v. United States, 404 F.2d 326 (5th Cir. 1968). In this case, since defendant has not raised entrapment as a defense as in

*Mosby, supra,* we believe it unnecessary to pass upon said issue to decide the case before us.

A careful review of all of defendant's contentions, considered in light of the entire record, convinces us that defendant has not been prejudiced either by the preindictment delay or the government's failure to call the informer as a witness.

Affirmed.