UNITED STATES of America,
Plaintiff,

v.

The **FIRST NATIONAL BANK OF CINCINNATI**, Defendant.

Crim. No. 9473.

United States District Court,
S. D. Ohio, E. D.

June 30, 1971.

William W. Milligan, U. S. Atty., Robert D. Zitko, Asst. U. S. Atty., and Ray Jahn and Edgar Brown, Dept. of Justice, for plaintiff.

Robert G. Stachler and James R. Bridgeland of Taft, Stettinius & Hollister, Cincinnati, Ohio, for defendant.

. OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on defendant's motion to dismiss for the reasons that (1) Section 610 of Title 18, United States Code, upon which the prosecution is predicated, violates the provisions of the First, Fifth and Sixth Amendments to the United States Constitution, (2) Section 610 does not provide a penalty applicable to the defendant and (3) the indictment does not allege all the essential and material elements of an offense. This case is decided on the basis of defendant's First, Fifth and Sixth Amendment arguments.

The indictment contains four counts. Each count charges the defendant, a national bank, with having made a loan in connection with an election held to select candidates for public office in violation of 18 U.S.C.A. § 610. Each count specifies the amount of the loan but does not indicate to whom the loan was made, the terms of the loan, nor which candidate allegedly received benefit from the loan.

These matters were clarified by a stipulation entered into between the parties to this action. The stipulation discloses that the loans were made at the normal interest rate, in the ordinary course of the bank's business, and were fully secured by stock pledged by Harry J. Gilligan, Sr. The loans were made to the Citizens for Gilligan Committee. The loan referred to in Count One of the indictment was made while John J. Gilligan was a candidate for the United States Senate. Gilligan was unsuccessful in his efforts to be elected Senator.

On December 18, 1968, the Citizens for Gilligan Committee repaid $20,000 of the principle of said loan, leaving a balance of $5,000.00 plus accumulated interest.

Gilligan won the nomination of the Democratic Party for Governor of Ohio on May 5, 1970 and was elected Governor on November 3, 1970. The loans referred to in Counts 2, 3 and 4 were made prior to the primary election of May 5, 1970. The principle and accumulated interest on all the loans were repaid by Harry J. Gilligan, Sr. on July 23, 1970.

I

The Court first turns to defendant's argument that Section 610 creates an arbitrary and unlawful classification which discriminates against national banks in violation of the Fifth Amendment. This argument is predicated on the fact that national banks are prohibited from making loans in connection with some elections while other credit organizations are not. Section 610 reaches "national bank[s] or any corporation organized by authority of any law of Congress," "any corporation," and "any labor organization." Defendant argues that the inclusion of these entities does not exhaust the class of organizations capable of making loans in connection with an elec-

tion. Defendant points out that partnerships are not covered.

The Court does not find the classification of entities covered by the operation of Section 619 to be so arbitrary as to be a denial of due process.

■ It is only the "invidious discrimination" or the classification which is patently arbitrary and utterly lacking in rational justification which is barred by the due process clause of the Fifth Amendment. Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

■ A classification which is reasonable in view of the subject regulated and the ends sought to be achieved does not violate due process. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391, 57 S.Ct. 578, 81 L.Ed. 703 (1937), and see Gruenwald v. Gardner, 390 F.2d 591 (2 Cir., 1968) and cases cited therein.

■ Considering the problem and legislative objectives identified by the Court in United States v. C. I. O., 335 U.S. 106, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948), the Court finds a reasonable relationship between the objectives and the classification. It may generally be assumed that the influence which a partnership can bring to bear on a candidate would be less than that of a large corporation. Likewise, the problems of "minority protection" are not as great in a partnership as in a large corporation or labor union.

## II

The Court next considers the defendant's argument that Section 610 arbitrarily deprives a national bank of the ordinary operation of its business in violation of the Fifth Amendment.

Section 610 provides in pertinent part:

It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, * * *

The terms "contribution" and "expenditure" are defined in 18 U.S.C.A. § 591. Section 591 specifically indicates that Section 610 is one of the sections to which the definitions are applicable. Thus,

The term "contribution" includes a gift, subscription, loan, advance, or deposit, of money, or anything of value, and includes a contract, promise, or agreement to make a contribution, whether or not legally enforceable;

The term "expenditure" includes a payment, distribution, loan, advance, deposit, or gift of money, or anything of value, and includes a contract, promise, or agreement to make an expenditure, whether or not legally enforceable.

The defendant contends that this statutory scheme is overbroad and impinges upon rights protected by the Fifth Amendment in that it prohibits a national bank from making loans in the ordinary course of its business, and thus constitutes a taking of a protected property right without any showing of overriding public need.

The courts have recognized the problem to which the particular statutory scheme involved in this case is addressed. See, United States v. C. I. O., *supra,* and United States v. International Union United Automobile, Aircraft and Agricultural Implement Workers of America, 352 U.S. 567, 77 S.Ct. 529, 1 L.Ed.2d 563 (1956). The Court in the *Auto Workers* case recognized that what is involved in a consideration of Section 610 is nothing less than the integrity of the electoral process and the responsibility of the individual citizen for the successful functioning of that process.

■■ There would be no violation of due process if Section 610 merely prevented preferential treatment of borrowers, in order to maintain the integrity of the electoral process. The fact that a liberty cannot be inhibited without due process of law does not mean that all re-

straints on a liberty are unconstitutional. Zemel v. Rusk, 381 U.S. 1, 14, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). The test of substantive due process is reasonableness. In the *C.I.O.* case, *supra,* Mr. Justice Rutledge labeled the objectives of the statutory scheme in question as the "undue influence," "purity of election" and "minority protection" objectives.

■ As this Court views the problem of regulating campaign financing, the goals of such regulation should be to promote an informed electorate, to insure that elected officials are responsive to the needs of the majority who elect them, and, as far as possible, to prevent elective office from becoming the exclusive prize of the influential or rich.

■ Even in light of this combined list of objectives, a regulation which prohibits fully secured loans made at ordinary bank rates in the normal course of business appears to have slight relationship to the objectives. The Court is not unmindful of the fact that rich or influential candidates might obtain fully secured loans more easily than other candidates and thus be able to promote their campaign extensively before contributions begin to pay the expenses. However, the evil in a regulation prohibiting all loans goes even further to promote inequality, and indeed might prevent some qualified persons from ever making their presence known to a majority of the electorate.

This leads directly to a further constitutional infirmity in Section 610 as it is applied in this case.

### III

The First National Bank of Cincinnati argues that Section 610 abridges its rights under the First Amendment. The range of legislative aims behind the regulation of campaign financing has been indicated above. With respect to the First Amendment rights inherent in the corporate personality of a national bank, the Court finds that the legislative aims justify the limitation imposed on those rights. A more difficult balancing question is presented in the case of voluntary incorporated associations which have as a purpose participation in political campaigns. That question is not before the Court.

■ The evil in Section 610 is not that it prohibits the political expression of a national bank, but that it directly affects the political expression of individuals who may wish to utilize their assets to secure credit on behalf of a particular candidate. Again, the Court points out that to the extent that Section 610 prohibits preferential treatment of borrowers the regulation is reasonable in light of the legislative aims. However, the Court determines that a prohibition of fully secured loans made at normal bank rates in the ordinary course of business places an unreasonable restraint on the First Amendment rights of individuals. Statutes restrictive of First Amendment rights or purporting to place limits on those rights must be narrowly drawn to meet the precise evil the legislature seeks to curb. United States v. C. I. O., *supra,* 335 U.S. at 141, 68 S.Ct. 1349, and cases cited therein. As applied to the defendant in this case, Section 610 is overbroad.

The Court considers it necessary to have considered the scope of Section 610 from the viewpoint of borrowers in order to protect the individual's rights. Otherwise, as indicated above, by the simple expedient of prosecuting lenders, the borrowers would be precluded from using their assets to obtain credit in behalf of a candidate.

Finally, the Court wants to make explicit that its holding with respect to the issue of overbreadth is predicated on the recognition that the right to associate and to use the assets of the individual members of the association to further the election of a candidate is a First Amendment right.

Whereupon, the Court determines that the defendant's motion is meritorious and therefore it is granted.

This action is hereby dismissed.