**UNITED STATES of America**

v.

**James Vincent WASHINGTON, Appellant.**

No. 24956.

United States Court of Appeals, District of Columbia Circuit.

May 22, 1972.

Mr. Allan M. Palmer, Washington, D. C., was on the brief for appellant.

Messrs. Harold H. Titus, Jr., U. S. Atty., and John A. Terry, Vincent R. Alto, and Charles E. Brookhart, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN, LEVENTHAL, and MacKINNON, Circuit Judges.

PER CURIAM:

This is an appeal from a conviction on a six-count indictment charging various violations of the federal narcotics laws.[1] Appellant claims that (1) the five-month delay between the alleged offenses and his arrest deprived him of due process

1.  26 U.S.C. §§ 4704(a), 4705(a); 21 U.S.C. § 174 (1970).

of law, (2) the trial judge erred in refusing to permit the appellant to inspect the Government's file in the case, and (3) the Government's eliciting from appellant on cross-examination the fact that he was arrested in possession of a large amount of cash was plain error necessitating a new trial. Having considered and found each of these contentions to be without merit, we affirm.

For some months prior to the return of the indictment on June 19, 1970, appellant had been the subject of an undercover investigation by agents of the Bureau of Narcotics and Dangerous Drugs. One agent testified that on January 28, 1970 he had purchased drugs from appellant during a transaction that lasted twenty to twenty-five minutes. On February 1, 1970, two other agents observed appellant selling a quantity of drugs to yet another agent in appellant's car at a restaurant parking lot. Appellant was not arrested for these offenses until June 21, 1970, at which time he was taken to the police station, searched, and found to be in possession of $735.00 in cash.

■ The Supreme Court has recently held that the right to speedy trial guaranteed by the Sixth Amendment does not comprehend delays prior to either the arrest or the indictment of the accused, and that dismissal by reason of pre-arrest or pre-indictment delays is warranted by the Due Process Clause of the Fifth Amendment only when it is

> . . . shown at trial that the . . . delay . . . caused substantial prejudice to appellant's rights to a fair trial and that the delay was a purposeful device to gain tactical advantage over the accused. United States v. Marion, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971).

Although appellant presented an elaborate alibi as to his whereabouts on February 1, he claims that the five-month delay prejudiced his ability to recall the alleged events of January 28, and thus deprived him of a fair trial under the standards announced by this court in Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965) and Powell v. United States, 122 U.S.App.D.C. 229, 352 F.2d 705 (1965). In both of those cases, however, the Government's case consisted entirely of the rather weak testimony of a single agent; and even then the delay was not held to be prejudicial in *Powell* because the defendant was able to present an alibi witness. Here, the January 28 transaction was testified to by two agents and one informant, and the fact that appellant was able to construct a detailed alibi for events three days later undercuts his claimed inability to recall events five months in the past.

Nor does the record suggest that the delay was a "purposeful device to gain tactical advantage over the accused. While the Government has not attempted to justify the delay in terms of the need to maintain an agent's "cover", *see Ross* and *Powell, supra,* it claims to have postponed appellant's arrest in hopes of discovering his source of narcotics and in order to protect its informant. In light of the difficulties of narcotics law enforcement, such explanations are hardly unreasonable, and we have recognized that the Government "must have some considerable latitude for the planning and organization of its undercover program. . . ." *Ross, supra,* 121 U.S. App.D.C. at 236, 349 F.2d at 213. Appellant attempts to refute the factual validity of these explanations, but the trial court found them to be "substantial and convincing," and we decline to overturn that finding here. *See* Mills v. United States, 149 U.S.App.D.C. ——, 463 F.2d 291 (1972); Godfrey v. United States, 123 U.S.App.D.C. 219, 358 F.2d 850 (1966).

■ Appellant's second claim must be rejected on the authority of our recent decision in Xydas v. United States, 144 U.S.App.D.C. 184, 445 F.2d 660, cert. de-

nied, 404 U.S. 826, 92 S.Ct. 57, 30 L.Ed. 2d 54 (1971). Indeed, the request to examine the Government's file in *Xydas* was based on a far more particularized claim of need than the request here to search through the entire file for any "potentially favorable defense evidence." Here, as in *Xydas*, the Government represented that the file contained confidential material relating to ongoing undercover work and that it contained nothing favorable to the accused. The trial court examined the file *in camera* and was well within its discretion in subsequently denying appellant's sweeping request. *See* United States v. Jordan, 399 F.2d 610 (2d Cir.), cert. denied, 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 469 (1968); United States v. Bland, 432 F.2d 96 (5th Cir.), cert. denied, 401 U.S. 912, 91 S.Ct. 877, 27 L.Ed.2d 810 (1970).

■ Appellant's third claim presents a more difficult question, but in light of the fact that he made no objection at trial to the allegedly erroneous question, we are not persuaded that the failure of the trial court to order a new trial after the verdict was plain error requiring reversal. Appellant testified in his own defense and denied on direct examination ever having used or sold narcotic drugs. On cross examination, the prosecutor asked appellant whether he was a narcotics peddler, and appellant again denied it. The prosecutor then asked appellant whether he had $735 in cash on him when he was arrested, which appellant admitted, and when asked how he got it, appellant testified that he won it in a crap game the night before. Appellant now claims that the question relating to the money tended to show guilt of other crimes not connected with the specific offenses with which he was charged—*i. e.*, more recent narcotics transactions—and was thus inadmissible. No objection was made at trial to the question as to money, and appellant has the burden of showing plain error.

While we agree that evidence of other crimes is not admissible as direct evidence of guilt, the question is different when the accused has specifically testified on direct that he had never sold any narcotics, in which case the prosecutor may at least to some extent attempt to impeach that denial. If appellant had objected to the question or line of questioning, the trial judge would have had to weigh its prejudicial effect against its value for impeachment. Although that question might have been close, the court was never asked either to disallow the question or to caution the jury with respect to it before they retired to consider the verdict. Whether this failure to object was simple inadvertence, as appellant now claims, or deliberate trial strategy is speculative, but we cannot say that denial of appellant's motion for a new trial after the verdict was plain error. *See* United States v. Williams, 141 U.S.App.D.C. 133, 436 F.2d 287 (1970); Scott v. United States, 115 U.S.App.D.C. 208, 317 F.2d 908 (1963). The doctrine of opening the door—or "curative admissibility"—has its limits, *See* United States v. Winston, 145 U.S.App.D.C. 67, 447 F.2d 1236 (1971), but at least we are not confronted with a case where the prosecutor improperly initiated questioning as to other crimes.

Affirmed.