UNITED STATES of America,
Plaintiff-Appellee,

v.

James A. WHITE, Defendant-Appellant.
No. 72–1039.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1972.

Decided Nov. 20, 1972.

Chauncey Eskridge and Aldus S. Mitchell, Judith Smith Leland, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., and William T. Huyck and Arnold Kanter, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and PELL, Circuit Judge.

CASTLE, Senior Circuit Judge.

The defendant-appellant, James A. White, prosecutes this appeal from the judgment of conviction and sentence entered by the District Court following his bench trial on an indictment charging him with selling heroin without a written order from the Secretary of the Treasury in violation of 26 U.S.C. § 4705 (1970).[1] The court sentenced him to ten years imprisonment to run consecutively to a sentence of twenty-five years imposed in 1966, also for the sale of narcotics.[2]

Defendant sets forth three arguments for the reversal of his conviction: (1) the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt, (2) the District Court should have dismissed the indictment under the sixth amendment of the United States Constitution and rule 48(b) of the Federal Rules of Criminal Procedure because the fifteen month delay between the alleged crime and the indictment prejudiced his defense, and (3) the knowledge of his previous conviction possessed by the trial judge deprived him of trial by an impartial judge. We find that each of these contentions lacks merit.

---

1. This section provided, in pertinent part:
   (a) It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate.
   Section 4705 was repealed by Pub.L. 91–513, title III, § 1101(b)(3)(A), Oct. 27, 1970, 84 Stat. 1292, effective May 1, 1971, which contained a savings provision specifying that any prosecutions for any violation of law occurring prior to the effective date of repeal would not be affected or abated by reason thereof. The provisions of § 4705 have been generally incorporated into 21 U.S.C. § 828 (1970).

2. The penalties for violation of 26 U.S.C. § 4705 were prescribed in 26 U.S.C. § 7237 (1964), which stated in pertinent part:
   (b) Whoever commits an offense, or conspires to commit an offense, described in section 4705(a) or section 4742(a) shall be imprisoned not less than 5 nor more than 20 years and, in addition, may be fined not more than $20,000. For a second or subsequent offense, the offender shall be imprisoned not less than 10 or more than 40 years and, in addition, may be fined not more than $20,000. . . .
   As a second offender, defendant received the minimum sentence under § 7237. This section was also repealed by Pub.L. 91–513, subject to a savings provision.

*1) Sufficiency of the Evidence.*

Defendant attacks the sufficiency of the evidence upon which the District Court found him guilty, concentrating on the criminal background of Charles Galloway, a key government witness, and certain alleged inconsistencies in his testimony. Arguing that proof beyond a reasonable doubt is mandated by the due process clause of the fifth amendment, he urges this court to find that the government has not fulfilled this burden.

In resolving an attack upon the sufficiency of the evidence which has resulted in a defendant's conviction, a reviewing court must view such evidence, together with all reasonable inferences which may be drawn therefrom, in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Tubbs, 461 F.2d 43, 45 (7th Cir. 1972); United States v. Bukowski, 435 F.2d 1094, 1104 (7th Cir. 1970), cert. denied, 401 U.S. 911, 91 S. Ct. 874, 27 L.Ed.2d 809 (1971). We find that the record as a whole contains sufficient evidence upon which the trier of fact could find the defendant guilty as charged.

The first government witness was Agent John Peoples of the Federal Bureau of Narcotics and Dangerous Drugs. His testimony may be summarized as follows. On the night of March 18, 1970, while he and his partner Howard Hayes were patrolling in their government vehicle on the 7200 block of Stony Island Avenue in Chicago, they observed defendant James White being picked up by a green and white Cadillac driven by Mrs. Cornelia ("Pee Wee") Rees and containing a passenger named Charles Galloway. Peoples and Hayes followed the Cadillac and its three occupants to a tavern at 55th and Prairie where White purchased what appeared to be a bottle of liquor. The car then proceeded to the vicinity of 53rd and Prairie where White once again left Rees and Galloway. Peoples dropped Agent Hayes off to continue surveillance of White on foot, and followed the Cadillac while it circled the block and eventually parked near an alley. Rees drove over to pick up White when he came out to the street about 20 minutes later, and then proceeded eastbound for several blocks before she stopped to allow White to take over the driving. White drove to 63rd and Martin Luther King Drive, where Galloway left the car, looked in both directions, and entered a kosher sandwich restaurant. At this point both agents followed Galloway and arrested him when he tried to run out of the restaurant. After taking Galloway to the restroom and searching him, they found two packages of white powder, one containing nine tinfoil packages and the other loose powder. The agents then took Galloway to the Bureau of Narcotics and Dangerous Drugs and conducted a field test on the contents of the two packages, getting positive reactions from both which indicated the presence of an opium derivative.

The next government witness, Charles Galloway, admitted being convicted in 1953 and 1956 for the possession of heroin, but said that he had not been convicted of anything since 1965, when he obtained a conditional release from the 15 year sentence imposed on him in 1956. He stated that on the night of March 18, 1970, White telephoned him and asked him if he wanted to "cop" (*i. e.* purchase some narcotics), since White was going out of town. The two agreed on a price of $300, and a half hour later White's Cadillac, driven by "Pee Wee" Rees, came by to pick Galloway up. The two then met White at the 7200 block of Stony Island and drove him to a liquor store, and then dropped him off at the corner of 53rd and Prairie. As Rees and Galloway circled the block, Galloway saw White talking with a man in a maxicoat whom he later learned was Hayes. Eventually White came out to the street, and, after he had gotten into the car, he handed a cellophane-wrapped package to Pee Wee, who then handed it to Galloway. Galloway had previously given the $300 to Pee Wee in payment for the nar-

cotics he had ordered over the phone from White. White then told Rees that he wanted to drive because he believed that he could "shake them," and, after driving the car to 63rd and King Drive, he told Galloway to get out and take a cab. Galloway left the Cadillac, went into a kosher place, but tried to leave when he saw the federal agents enter. They restrained him, asked him what he had on him, and called him a liar and took him to the restroom for a search when he denied having anything. The search yielded two cellophane-wrapped packages—one which Galloway admitted under questioning that he had gotten from White through Rees and had not opened yet, and one which he had in his possession before he got into White's car earlier that evening. Galloway admitted that he had not given White an order furnished by the Secretary of the Treasury for the narcotics. He denied being promised anything for his testimony, although he said there were no state or federal charges made against him arising out of his arrest for heroin possession on the night of March 18, 1970.

Howard Hayes, special agent of the Bureau of Narcotics and Dangerous Drugs and the partner of Agent Peoples, corroborated Peoples' testimony about observing White get into the Cadillac, enter the liquor store on 55th and Prairie, and leave Rees and Galloway in the car at 53rd and Prairie. He testified that when he got out of his vehicle to observe White on foot, White walked back to him and asked him "what district he was working in." After Hayes replied that he wasn't a policeman and that he was awaiting someone, White left and entered a building. Hayes then rejoined Peoples in the government car, where they maintained surveillance of Rees and Galloway in the Cadillac. Hayes also recalled seeing the Cadillac pick up White, observing the change of drivers, and arresting and searching

Galloway at the restaurant after he had tried to rush out the door and had denied getting out of any car to go into the restaurant.

Testifying on his own behalf, defendant denied that he had called Galloway on the night of March 18, 1970 and had offered to sell narcotics to him. He stated that he could not remember being on either Stony Island Avenue or Prairie Street on March 18, 1970,[3] but denied that he had any conversation with Agent Hayes or had handed any narcotics to Mrs. Rees at that time. He testified that he had been living with Mrs. Rees, and had been convicted in the past for the sale of narcotics, a conviction which the Court of Appeals for the Seventh Circuit reversed and which the Supreme Court of the United States had reinstated the day before his arrest for the instant crime.

Defendant argues on this appeal that the testimony of Charles Galloway, which is the sole proof that the defendant actually sold narcotics on March 18, 1970, is insufficient to prove guilt beyond a reasonable doubt. He contends that because Galloway was a convicted felon with an arguable incentive to modify his testimony and because the evidence amounted to the word of one felon against another, the trial judge should have found that the presumption of a defendant's innocence raised a reasonable doubt as to his guilt. He also argues that Galloway's testimony is unbelievable because of the unlikelihood that the package of narcotics could have been handed around the moving Cadillac the way Galloway said it was, and because the second package of narcotics found on Galloway by the agents was not produced at trial or adequately accounted for.

Defendant's argument amounts to a demand that this court reverse the credibility determinations of the trier of fact. But "it is not the province of the

---

3. In the colloquy after the defendant had been found guilty, he in effect changed his testimony by absolutely denying that he had been at these places or had been with Galloway.

Court of Appeals to retry the case, weigh the evidence or determine the credibility of witnesses. . . ." United States v. Miles, 401 F.2d 65, 67 (7th Cir. 1968). And "[q]uestions of credibility have no bearing on the insufficiency of the evidence as a whole . . . and are not for the reviewing court's decision." United States v. Karigiannis, 430 F.2d 148, 151 (7th Cir.), cert. denied, 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed.2d 141 (1970). The District Court was well apprised of the criminal records of both White and Galloway, and made its credibility determinations in light of this impeachment and the cross examination by defendant's counsel. We also recognize the problem of obtaining witnesses with unblemished backgrounds in narcotics prosecutions and the necessity of accepting testimony of informers and narcotics users, with reasonable skepticism and scrutiny of what they say. See, Hoffa v. United States, 385 U.S. 293, 311, 87 S.Ct. 408, 17 L.Ed.2d 374 (1967); United States v. Adams, 454 F.2d 1357, 1359–1360 (7th Cir. 1972). Moreover, as the District Court indicated in the colloquy following its finding of guilt, White's denials that he had any conversation with Galloway or had seen Agent Hayes on March 18, 1970 were against the weight of the testimony of not only Galloway, but also Agents Peoples and Hayes. Certainly the trier of fact, faced with this contradiction of the defendant's testimony, had doubts about his veracity elsewhere. We therefore hold that there is sufficient evidence in the record to sustain a finding of guilt.

### 2) The Delay in Bringing the Indictment

Defendant argues that his rights under the sixth amendment of the Constitution of the United States and rule 48(b) of the Federal Rules of Criminal Procedure were violated by the 15 month delay between the time of the alleged narcotics sale on March 18, 1970 and the indictment on June 24, 1971. He contends specifically that his defense was prejudiced by the death of Cornelia ("Pee Wee") Rees on April 13, 1971, one week after he was arrested, because she could have materially assisted him in his defense by testifying concerning conversations among him, Galloway, and herself while riding together on March 18, 1970. Although defendant raised this issue in his motion to dismiss the indictment prior to trial, he did not request an evidentiary hearing to determine if actual prejudice resulted, but relied solely on an unsupported conclusion that the delay and following unavailability of Mrs. Rees was in itself sufficient to establish a violation of his constitutional rights. See, United States v. Pritchard, 458 F.2d 1036, 1038 (7th Cir. 1972).

Initially we note that defendant's reliance on the sixth amendment and rule 48(b) is foreclosed by the decision of the United States Supreme Court in United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). There the Court declared that rule 48(b) is "clearly limited to post-arrest situations," Id. at 319, 92 S.Ct. at 463, and that the protection of the sixth amendment does not "extend . . . to the period prior to arrest," Id. at 321, 92 S.Ct. at 463, even though the passage of time might either cause evidence to be lost or deprive the defendant of witnesses. The Court did hold, however, that the due process clause of the fifth amendment would protect defendants who could show more than potential prejudice in the pre-arrest period, and agreed with the government's concession that the due process clause would bar a prosecution where a defendant demonstrated that the pre-indictment delay caused substantial prejudice to his right to a fair trial and that the delay was an intentional device of the government to gain a tactical advantage over him. Id. at 324, 92 S.Ct. at 455. But the Court refused to determine "when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution" although it did recognize that not every delay-caused detriment to a defendant's case should abort criminal proceedings. Id.

at 324–325, 92 S.Ct. at 465. We need not consider the government's contention in this case that, in order to gain a dismissal of an indictment, a defendant must demonstrate that the government has caused a delay in arresting or indicting him for its own advantage, for we find that defendant White has not shown actual prejudice caused by Mrs. Rees' death during the time prior to his indictment to warrant dismissal of the charges against him.

This circuit has long held that, in order to obtain dismissal of an indictment because the delay in bringing it violated his right to due process of law, a defendant must allege and demonstrate actual prejudice to his defense caused by the delay. United States v. Hauff, 395 F.2d 555, 557 (7th Cir.), cert. denied, 393 U.S. 843, 89 S.Ct. 124, 21 L.Ed.2d 113 (1968); United States v. Deloney, 389 F.2d 324, 325–326 (7th Cir.), cert. denied, 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 417 (1968). Where witnesses have died or become unavailable prior to trial and the trial court has held no hearing on the prejudice resulting to the defendant, appellate courts have read the record to find whether these witnesses could have materially helped the defendant's case. United States v. Aberson, 419 F.2d 820 (2d Cir.), cert. denied, 397 U.S. 1066, 90 S.Ct. 1497, 25 L.Ed.2d 687 (1970); United States v. Haggerty, 419 F.2d 1003 (7th Cir. 1969), cert. denied, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970); United States v. Lee, 413 F.2d 910 (7th Cir. 1969), cert. denied, 396 U.S. 1022, 90 S.Ct. 595, 24 L.Ed.2d 515 (1970).

We cannot say that the testimony of Mrs. Cornelia Rees would have so materially helped the defendant's case that her death before the indictment was returned prejudiced him. As was previously noted, defendant White denied

that he had even been with Mrs. Rees or Galloway on the night of March 18, 1970. If Mrs. Rees corroborated this claim, her testimony would still be contradicted by Galloway and by the eyewitness accounts of the two federal agents. If she would testify to the conversations occurring among Galloway, White, and herself on that night, as defendant's motion to dismiss the indictment alleged, she would be contradicting rather than corroborating White, who testified that he wasn't even in the car.[4] We find that, in the context of White's own testimony, the loss of the testimony that Mrs. Rees allegedly could have given did not prejudice his defense so as to infringe upon his right to due process of law.

### 3) Denial of the Right to a Fair Trial by an Impartial Judge.

Defendant complains of the fact that the trial judge knew of his 1966 conviction for selling narcotics and his subsequent release by the reversal of this conviction by an opinion of the Court of Appeals which the Supreme Court in turn reversed.[5] He argues that this knowledge deprived him of a fair trial by a judge who had not prejudged the case, and cites the following remark as evidence of the district judge's predisposition:

> The point is, Mr. White, if the Court of Appeals had properly interpreted the law you wouldn't have been out on the street on March 18, 1970 to do this, and it is unfortunate that you have had this opportunity to commit another crime due to the error of the Court of Appeals in reversing your first conviction. . . .

The record shows, however, that the defendant's own counsel elicited the facts mentioned by the trial judge on direct examination of his client, and that the

---

4. Perhaps the availability of Mrs. Rees at trial would have enabled defendant White to tell another story at trial which admitted his presence in the Cadillac on March 18, 1970, but then his claim of prejudice on appeal would amount to an

admission of perjury in his actual testimony in the court below.

5. See, United States v. White, 405 F.2d 838 (7th Cir. 1969), rev'd, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).

trial judge made his remarks only after he found the defendant guilty and only after the defendant had requested a lighter sentence than the judge had actually imposed. We find that his remarks were an explanation of the sentence he imposed rather than the rationale for his finding of guilt, and that the record fails to support the defendant's contention that the trial judge had predetermined his guilt before the evidence was fully presented.

For the above reasons, the judgment order of conviction and sentence entered by the District Court is affirmed.

Affirmed.