**UNITED STATES of America,**
**Appellant,**

v.

**Alexander J. BARKET, Appellee.**

**No. 75–1320.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1975.

Decided Jan. 28, 1976.

Rehearing and Rehearing En Banc
Denied March 23, 1976.

Henley, Circuit Judge, dissented and filed opinion.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellant.

Veryl L. Riddle, St. Louis, Mo., for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and VAN PELT, Senior District Judge.*

GIBSON, Chief Judge.

This is an appeal by the United States pursuant to 18 U.S.C. § 3731 (1970)[1] from the District Court's[2] dismissal of a two count indictment charging the appellee, Alexander J. Barket, with making an unlawful political contribution and misapplying bank funds in violation of 18 U.S.C. §§ 2, 610 and 656 (1970) on the ground that Barket's Fifth Amendment right to due process was violated by prejudicial pre-indictment delay. Alternatively, the District Court found that prosecutorial misconduct violating legal and ethical codes and regulations also required dismissal as an exercise of the court's supervisory power to insure the proper administration of criminal justice. We affirm on the due process ground of prejudicial pre-indictment delay.

The indictment in question,[3] filed against Barket on June 12, 1974, arose

---

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

1. The Criminal Appeals Act, 18 U.S.C. § 3731 (1970), provides in part:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

\* \* \* \* \* \*

The provisions of this section shall be liberally construed to effectuate its purposes.

2. The Honorable John W. Oliver, United States District Judge for the Western District of Missouri, dismissed the two count indictment on April 4, 1975.

3. The instant proceeding, No. 74CR–168–W–1, is the fourth criminal proceeding instituted against Barket and his bank since October, 1973. The three prior proceedings involved an alleged $7,500 political contribution paid October 15, 1968, in the form of a sham salary bonus to a bank employee routed in turn to a political party.

The first prior criminal proceeding was by indictment in No. 73CR–231–W–1 charging both Barket and the bank with violations of 18 U.S.C. §§ 610, 656 and 1005. It was dismissed for duplicity and failure to state an offense on November 23, 1973. The second proceeding was again by indictment in No. 74CR–141–W–1 charging the same violations of §§ 610 and 656 in two counts. Barket was acquitted on count II on April 4, 1975, by the District Court sitting without a jury, and the court's refusal to dismiss count I on double jeopardy grounds was affirmed and the case remanded by another panel of this court in *United States v. Barket*, 530 F.2d 181, Nos. 75–1568, 1569 (8th Cir. Dec. 9, 1975). The third proceeding was by information filed May 21, 1974, charging the bank alone with the same violation of § 610. It was dismissed by the district court as barred by the statute of limitations. *United States v. Civic Plaza National Bank*, 390 F.Supp. 1342 (W.D.Mo.1974). The Government did not appeal.

out of a transaction involving the Civic Plaza National Bank of Kansas City, Missouri, of which Barket was president, chairman and primary beneficial owner. Both counts were based upon a single transaction involving an unsecured loan of $30,000 made on July 29, 1970, to the Regular Democrats, a now-defunct, loosely organized ad hoc political group composed of various factions of the Democratic Party in Jackson County, Missouri. The loan was to be used for campaign advertising expenses in the primary election of August, 1970, and was to be repaid with proceeds from a victory dinner honoring the late William Morris, Lieutenant Governor of Missouri, and from other contributions.

The June, 1974, indictment charged Barket with consenting "to the contribution and expenditure" of national bank funds to a political organization to pay election expenses in violation of 18 U.S.C. § 610 (count I),[4] and with misapplying the same funds by means of the same "contribution * * * guised as a bank loan" in violation of 18 U.S.C. §§ 2 and 656 (count II).[5] The loan was approved by the bank's discount committee and the $30,000 debt evidenced by a note signed by Lawrence Gepford, a Kansas City attorney and former Prosecuting Attorney for Jackson County, Missouri, who deposited the proceeds in an account maintained by the group. The loan was once extended, but was ultimately repaid in full with interest by Barket and others just prior to the extended maturity date on January 21, 1971, upon order of the Comptroller of the Currency.

Barket has contended from the start of this prosecution that the subject transaction was not a "contribution" but a bona fide bank loan made in the ordinary course of business so as to be exempt under § 610, and that the Regular Democrats was not a political committee of the type intended to be covered by the Act. Before putting the Government to its proof on these issues, Barket, on July 19, 1974, moved for dismissal of the indictment *inter alia* on the grounds that his defense had been prejudiced by approximately 47 months delay in the filing of the charge and by prosecutorial misconduct. In an extensive five-day pretrial hearing in February and March, 1975, the District Court took evidence relating to Barket's allegations of delay and misconduct.

During the course of the hearing it came to light that in a routine bank examination on January 4, 1971, a national bank examiner discovered and subsequently reported the $30,000 loan to the Regional Administrator of National Banks. On March 15, 1971, the Comptroller of the Currency referred the loan

---

**4.** The statute, 18 U.S.C. § 610 (1970), formerly provided in part as follows:

It is unlawful for any national bank * * * to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election * * * or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.

* * * [E]very officer or director of any corporation * * * who consents to any contribution or expenditure * * * and any person who accepts or receives any contribution, in violation of this section, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if the violation [is] willful, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

The statute was amended in 1972, causing a change in Justice Department policy after a number of unsuccessful prosecutions. *See, e. g., United States v. First National Bank*, 329 F.Supp. 1251 (S.D.Ohio 1971). A provision was added excluding from the Act's coverage bona fide bank loans made in the ordinary course of business. See 18 U.S.C. § 610 (Supp. II, 1972) and discussion in S.Rep.No. 92–229, 92d Cong., 2d Sess., *reprinted in* 2 U.S.Code Cong. & Admin.News pp. 1821, 1858 (1972).

**5.** The statute, 18 U.S.C. § 656 (1970), provides in pertinent part as follows:

Whoever, being an officer, director, agent or employee of * * * any * * * national bank * * * embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both * * *.

by letter to the Criminal Division of the Department of Justice in Washington for possible prosecution. One year after the referral the Justice Department declined prosecution of Barket or Civic Plaza and closed the case.

The central office of the Department of Justice in Washington, however, did not report the referral, declination or closing of Barket's case to the United States Attorney for the Western District of Missouri, and apparently retained no record summarizing the information gathered in its investigation of the $30,-000 loan or revealing the reasons for its declination of prosecution. Consequently, when the local United States Attorney discovered the loan in an unrelated investigation in late 1973, and thereafter requested permission to indict Barket, the Justice Department in Washington granted permission but did not consider the request as a question of whether new evidence or other factors justified reopening the two year old closed case. This failure to exercise the required centralized prosecutorial discretion was considered by the District Court as a factor in assessing prejudice to Barket's defense.

At the close of the hearing, the District Court concluded that the knowledge possessed in early 1971 by the national bank examiner and the Department of Justice in Washington should in fairness be imputed as well to the local United States Attorney in assessing Barket's claim that he was denied due process, and that Barket had shown sufficient delay-caused prejudice to his defense. By early 1975, six material witnesses had died and others had faded memory of events crucial to Barket's defense. Consequently, the court felt compelled to dismiss the indictment, relying upon *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

The Government appeals, contending that Barket failed to meet his burden of proving actual prejudice to his defense and, in any event, failed to demonstrate that the delay was intentionally sought by the Government to gain tactical advantage—as it claims he must under *United States v. Marion, supra.* In *Marion,* the Supreme Court recognized that statutes of limitation do not fully define suspects' rights to be speedily accused and that governmental pre-prosecution delay may violate a defendant's right to due process under the Fifth Amendment. The Court announced the new standard for assessing this claim in *Marion*:

> Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. * * * However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution.

*United States v. Marion, supra* at 324, 92 S.Ct. at 465. (Citations omitted.) The *Marion* defendants failed to allege or prove that their defense was actually prejudiced by the delay or that the Government intentionally engaged in delay to gain tactical advantage over them. Consequently, the Court, while recognizing that "[e]vents of the trial may demonstrate actual prejudice," held that their due process claims were speculative and premature. 404 U.S. at 326, 92 S.Ct. at 466.

█ It is settled, therefore, that the fact that the five-year statute of limitations [6] applicable to Barket's alleged vio-

---

6. 18 U.S.C. § 3282 (1970). Barket cannot benefit directly from Congress' reduction of the statute of limitations to three years subsequent to the filing of the indictment. Section 406(a) of the Federal Election Campaign Act Amendments of 1974, Pub.L. No. 93–443 (October 15, 1974), did not affect any proceeding

pending on the Act's effective date. However, as noted below, we deem Congress' shortening of the limitations period applicable to political finance offenses relevant under the Fifth Amendment in balancing the reasons for the delay against the resultant prejudice to Barket.

lations of §§ 610 and 656 was not due to expire until thirteen months after the indictment was filed does not foreclose his assertion of prejudice from pre-indictment delay. Under *Marion*, Barket's Fifth Amendment claim involves "a process of balancing the reasonableness of the delay against any resultant prejudice to the defendant." *United States v. Jackson*, 504 F.2d 337, 339 (8th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975); *United States v. Norton*, 504 F.2d 342, 344 (8th Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 790, 42 L.Ed.2d 811 (1975). The test for determining prejudicial impact is whether the delay "has impaired the defendant's ability to defend himself," *United States v. Golden*, 436 F.2d 941, 943 (8th Cir.), *cert. denied*, 404 U.S. 910, 92 S.Ct. 236, 30 L.Ed.2d 183 (1971), and the trial court's finding on the prejudice issue must stand unless clearly erroneous. *United States v. Jackson, supra* at 341.

■ After a careful review of the record, briefs and arguments of the parties, we believe the instant case, unlike *United States v. Jackson, supra*, and cases cited therein, presents a unique showing of prejudice sufficient in the circumstances to require dismissal of the indictment. The passage of time, for which Barket was not responsible, was considerably longer (47 months) than that in any other of our decisions failing to find prejudice; and the District Court's finding of prejudice is not subject to reversal by us unless it is clearly erroneous. Six witnesses who, Barket claims, would have materially aided his defense died before the case could have come to trial. They were: Leon Jordan, the leader of Freedom, Inc., a Jackson County precinct organization that allegedly received funds from the Regular Democrats; Bill Royster, leader of the Good Government Association, another alleged recipient; Alex Presta, leader of the Metropolitan Democratic Club; William Morris, the late Lieutenant Governor of Missouri in whose honor the Regular Democrats sponsored their fund raising dinner; H. Moody Murray, a local candidate who allegedly received some of the borrowed funds; and finally, Daniel McKeever, a director of Civic Plaza National Bank. Moreover, as the District Court found, many other witnesses who are still alive and able to testify for Barket had, in the District Court's words, "extreme and understandable difficulty remembering" relevant facts. The loss of these witnesses undoubtedly impaired Barket's ability to defend himself on the crucial issue of whether the $30,000 loan on the books of the bank was actually a loan made in the ordinary course of business or a political contribution. *Cf. United States v. Golden, supra* at 943.

■ A test for judging the reasonableness of pre-indictment delay comparable to that for assessing whether the defendant was prejudiced by the delay has, however, not yet been clearly developed. Lacking a predetermined standard, we employ a "delicate judgment" based upon the circumstances of each case, *United States v. Marion, supra*, 404 U.S. at 325, 92 S.Ct. 455, balancing a combination of factors such as those employed in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for assessing the impact of the denial of speedy trial after arrest.

The Government contends that the instant delay was not unreasonable for the reason that the local United States Attorney indicted Barket as soon as the facts of the loan became known to him. "Actual notice" of the 1971 referral, it contends, was not obtained locally until May 1, 1974. This contention, however, was contradicted by Barket's claim that his attorney had informed the local prosecutor of the bank examiner's 1971 investigation at a meeting on April 12, 1974, which was prior to the prosecutor's request for permission to seek the instant indictment. The Government's contention is also weakened by the District Court's finding that the United States Attorney was interested in investigating Barket well before 1974. In a conversation with the Attorney General

of Missouri in early 1971, the United States Attorney discussed Barket and Civic Plaza by name as possible targets among others in his proposed investigation of political banking violations.

The apparent weakness of the Government's case is an additional factor relevant to balancing the reasonableness of the delay against the resultant prejudice to Barket. *United States v. Jackson, supra* at 341. In this respect we deem it significant that the United States Attorney's own staff expressed reservation as to the merits of the Government's accusation. It is also significant that the instant loan was in fact ultimately repaid in full by Barket and others, not including Gepford, the maker of the note, long prior to this indictment.[7] There is no evidence of any kind that the bank intended to charge off the loan and thus make a political contribution. Relevant also, although not binding in the present case, is the fact that the statute of limitations applicable to § 610 offenses has now been reduced to three years. See note 6, *supra.* In the future, the amendment will serve to protect similar defendants from the extreme difficulties of recreating the circumstances of political activity out of the distant past. In the present case, by the same token, Congress' decision to shorten the limitations period is not entirely irrelevant to

our assessment of the reasonableness of the 47 month delay.

The Government further contends that a finding of prejudice, even in conjunction with a conclusion that the delay was unreasonable, is not sufficient to compel the harsh remedy of dismissal without an additional showing that the Government intentionally engaged in delay to gain tactical advantage over the defendant. Barket challenges this interpretation of the language in *Marion* quoted above by insisting that a defendant's affirmative demonstration of substantial prejudice alone is sufficient for relief from pre-indictment delay under the Fifth Amendment.[8] Neither view is entirely correct, however. Some question still remains whether the Supreme Court's comment in *Marion* quoted above was intended to establish a two-part conjunctive test for due process relief from pre-indictment delay or simply a disjunctive list of alternative theories: (1) governmental misconduct in the form of tactical delay, or (2) substantial prejudice resulting from the lapse of time denying the defendant's right to a fair trial.

In previous cases, this and other circuits have not had occasion to determine whether *Marion* is to be read conjunctively or disjunctively because the circumstances before them did not include sufficient prejudice to the defense from

---

7. This fact alone would appear to rebut the theory that the loan was a sham. Further, the Government's reference to the fact that the maker of the note, Lawrence Gepford, was not an officer of the Regular Democrats has no apparent relevance to the substance of the loan transaction. This was a group loosely organized for ad hoc political purposes. The essential question in determining the bona fides of the loan is not the purpose for which the borrower intends to use the proceeds, but whether the maker of the note had sufficient personal resources to justify extending him credit. The record does not suggest that Gepford's resources were inadequate for this purpose. If they were adequate and the debt was in fact repaid, it would appear that the loan could not be challenged in the manner attempted here by the Government. Loans of this sort are and can be made every day by political candidates or groups. Many persons

sign for loans of this kind to underwrite political activity, fully expecting political contributions and fund raising activities to pay off the loan, knowing that they could be legally liable if the campaign turns sour.

8. Barket's position is based upon an interpretation of a footnote in *United States v. Jackson, supra* at 339 n. 2, that "at least where the government is not engaging in intentional delay in order to gain a tactical advantage over the accused, the defendant must affirmatively demonstrate prejudice." *Citing United States v. Marion, supra* at 325–26. *See also United States v. Giacalone,* 477 F.2d 1273, 1276–77 (6th Cir. 1973). In *Jackson,* this court affirmed a finding that the defendant had failed to demonstrate prejudice or intentional delay, thus having no occasion to decide whether both elements or only one is required for relief.

pre-indictment delay to merit relief *even if* joined with a showing of serious governmental "gamesmanship."[9] Similarly, in the present case we do not determine whether a showing of substantial prejudice caused by delay alone is sufficient for relief under the Due Process Clause of the Fifth Amendment. We need not, for the reason that in addition to showing obvious prejudice to his ability to present a defense, Barket has encountered governmental negligence rendering the delay unreasonable. The culpable failure by the Department of Justice to inform the local United States Attorney of the 1971 referral and declination was akin to a failure to let " 'the left hand know what the right hand is doing' or has done." The fact that the governmental lack of communication between its component parts "was inadvertent" does not lessen its impact. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). This conduct adds an additional factor favoring Barket in the Fifth Amendment balance. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

■ Although the two-year delay by the Justice Department in communicating its declination of prosecution of Barket to the local United States Attorney cannot be characterized as an intentional attempt to gain tactical advantage, it does constitute an additional element of culpability on the Government's part sufficient in the circumstances to tip the due process balance and require dismissal. As the Court stated in *Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972):

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. (Footnote omitted.)

■ The District Court properly imputed the notice provided by the Comptroller's 1971 referral to the Justice Department as notice in turn to the local federal prosecutor. In these circumstances one office within a single federal agency must know what another office of the same agency is doing or has done regarding the accused. *See generally Giglio v. United States, supra; Santobello v. New York, supra.* This is no more than to hold the Government to the same standard of conduct as governs private individuals in transmitting notice from agent to principal. *See Restatement (Second) of Agency* §§ 268, 272 (1958). The relationship between an individual and his government is *sui generis.* Absent new evidence or a material change in circumstances, a private citizen should be able to rely upon a decision by the Government not to prosecute his prior conduct. *Cf. United States v. Mann,* 517 F.2d 259, 269–70 (5th Cir. 1975).

Here, the Government's change of theory as to the substantive reach of § 610 cannot relieve it of its obligation to

---

**9.** *See United States v. White,* 470 F.2d 170, 174–75 (7th Cir. 1972); *United States v. Emory,* 468 F.2d 1017, 1019–20 (8th Cir. 1972); *United States v. Iannelli,* 461 F.2d 483, 485 n. 2 (2d Cir.), *cert. denied,* 409 U.S. 980, 93 S.Ct. 310, 34 L.Ed.2d 243 (1972).

References to *United States v. Marion, supra,* most often simply recite the two elements without suggesting whether both must be present or either is sufficient for relief from pre-indictment delay under the Due Process Clause. *See United States v. McKim,* 509 F.2d 769, 772–73 (5th Cir. 1975); *United States v. Schwartz,* 464 F.2d 499, 503 n. 5 (2d Cir.), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972); *United States v. Houp,* 462 F.2d 1338 (8th Cir.), *cert. denied,* 409 U.S. 1011, 93 S.Ct. 456, 34 L.Ed.2d 305 (1972). Some courts, however, have appeared to imply that both elements must be satisfied to merit relief. *United States v. Beitscher,* 467 F.2d 269, 272 (10th Cir. 1972); *United States v. Washington,* 150 U.S.App.D.C. 68, 463 F.2d 904, 905 (1972); *United States v. Daley,* 454 F.2d 505, 508 (1st Cir. 1972).

bring the charges against Barket promptly enough to permit him to establish his defense. The Government first contended that any loan to a political group by a national bank was illegal. Then, after adverse court decisions [10] and amendment of the statute, its position with respect to the instant loan changed. Two years later, after declining prosecution of Barket under its first theory, it contended that Civic Plaza's loan to the Regular Democrats was in truth no loan at all but only a sham created to disguise the bank's outright contribution.

■ As the District Court held, however, the prejudice to Barket's defense caused by the 47 month period between the transaction and the indictment was severe. Witnesses who might have been able to demonstrate that the transaction was in fact intended as a bona fide loan or to disprove the alleged political contribution aspect of the loan transaction are now dead or unable to recall circumstances that existed more than five years ago. In any event, the Government must bear the burden of demonstrating that the missing witnesses did not possess exculpatory evidence. *United States v. Norton,* 504 F.2d 342 (8th Cir. 1974), *cert. denied,* 419 U.S. 1113, 95 S.Ct. 790, 42 L.Ed.2d 811 (1975). This it has not done.

■ In affirming the instant dismissal we do not depart from our previously stated position that due process claims of pre-accusation delay will be scrutinized closely for actual prejudice and not be interpreted loosely. *United States v. Jackson,* 504 F.2d at 340 n. 4. Nor do we place any reliance on the District Court's finding that the Department of Justice failed to exercise its centralized prosecutorial discretion.[11] In the past we noted that unreasonable pre-accusation delay causing prejudice to the defendant's ability to present his defense may call for dismissal of the indictment on due process grounds. In the present case we hold only that the District Court was not clearly erroneous in finding that the delay of 47 months caused substantial prejudice to Barket's defense and correctly held that because of the Government's culpable negligence in failing to inform the local United States Attorney of its decision not to prosecute more than two years before approving the instant indictment, the delay was unreasonable and Barket's right to due

---

10. According to a November 8, 1974, letter from an official of the Department of Justice Criminal Division to the local United States Attorney, indictments were returned against four other national banks on February 24, 1971, in the Southern District of Ohio for alleged "political loans" in violation of § 610. These cases were dismissed June 30, 1971, as unconstitutional applications of § 610 for reasons stated in *United States v. First National Bank,* 329 F.Supp. 1251 (S.D.Ohio 1971). According to the Justice Department official, the Government withdrew its appeal of the Ohio dismissals "in the interest of justice" soon after the 1972 amendment to § 610 was signed into law. Soon thereafter, the Justice Department undertook a review of all pending § 610 cases against national banks and closed many, including that against Barket and Civic Plaza. The other cases are apparently unreported.

The 1972 amendment of § 610, 18 U.S.C. § 610 (Supp. II, 1972), added *inter alia* a provision that "the phrase 'contribution or expenditure' shall include any direct or indirect payment, * * * loan, * * * or gift of money * * * (except a loan of money by a national or State bank made in accordance with the applicable banking laws and regulations and in the ordinary course of business) * * *"

11. In its discussion of the various developments causing prejudice to Barket, the District Court found that the Department of Justice in Washington could not have exercised its centralized prosecutorial discretion in an informed manner when it approved the July, 1974, indictment. The Department had no record before it of its 1972 decision declining prosecution of Barket and the local United States Attorney, though informed of the prior proceedings, apparently did not remind the Department of its prior decision when he requested permission to indict in 1974. Our affirmance of the District Court's dismissal, however, is in no way related to the District Court's view that this failure of the internal operating procedures of the Department of Justice amounts to a denial of due process, as we think such matters of internal operating procedure in the executive branch are not subject to judicial oversight or interference. The impact of the failure was obviously damaging to Barket but it did not deny him procedural protection to which he was constitutionally entitled and serves as no additional basis for our holding.

process of law must prevail. While there is considerable evidence relating to the District Court's alternative finding of prosecutorial misconduct as a basis for the dismissal, we need and do not consider it, as our holding on the issue of pre-indictment delay is dispositive of the appeal.

The judgment of the District Court dismissing the indictment is affirmed.

HENLEY, Circuit Judge (dissenting).

In disagreeing with the majority I express no opinion as to whether the defendant should have been prosecuted at any time or as to whether if he had been called upon to stand trial he would have been convicted on either or both counts of the indictment. My point of difference with the majority is that I do not consider that the due process clause of the fifth amendment either required or justified the dismissal of the indictment by the district court.

The purpose of the due process clause is not to punish administrative officials of the government charged with the enforcement of the criminal laws of the United States for administrative derelictions of duty, or for inconsistencies in administrative decisions, or for inefficiency. Nor is its purpose to assure persons suspected of crime of immediate or particularly prompt arrest and prosecution, or to protect such persons from the anxieties and uncertainties that normally accompany one's being aware that he is the subject of a criminal investigation and may be the subject of a criminal prosecution. Its purpose, in present context, is to assure a defendant in a criminal case of a fair trial when prosecuted on a charge of crime.

That the question presented here is a constitutional one has been expressly recognized by the majority.

The explicit right of a defendant to a "speedy trial" guaranteed by the sixth amendment does not extend to pre-arrest or pre-indictment delays in prosecution. However, pre-prosecution delays may amount to violations of the rights of defendants to due process of law un-

der the fifth amendment. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). This court had come to the same conclusion in pre-*Marion* cases including *United States v. Golden*, 436 F.2d 941 (8th Cir.), *cert. denied*, 404 U.S. 910, 92 S.Ct. 236, 30 L.Ed.2d 183 (1971); and *Terlikowski v. United States*, 379 F.2d 501 (8th Cir. 1967). And the problem has been considered by us in the post-*Marion* cases of *United States v. Jackson*, 504 F.2d 337 (8th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975); *United States v. Norton*, 504 F.2d 342 (8th Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 790, 42 L.Ed.2d 811 (1975); *United States v. Washington*, 504 F.2d 346 (8th Cir. 1974); and *United States v. Houp*, 462 F.2d 1338 (8th Cir.), *cert. denied*, 409 U.S. 1011, 93 S.Ct. 456, 34 L.Ed.2d 305 (1972).

Obviously, any delay, whether it be in the initiation of a prosecution or whether it be in bringing a defendant to trial after he has been arrested or indicted, can result in prejudice. Inevitably, with the passage of time witnesses die, disappear, or become unavailable and memories of past events fade. At times the delay operates to the advantage of the prosecution; at other times, and perhaps more often, it operates to the advantage of the defendant. *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. Marion, supra*, 404 U.S. at 321–22, 92 S.Ct. 455.

While the sixth amendment guarantees a defendant a speedy trial after proceedings against him have been commenced, as far as pre-prosecution delay is concerned a defendant must normally look for protection to the applicable statute of limitations. *United States v. Marion, supra*, 404 U.S. at 322 and 326, 92 S.Ct. 455; *United States v. Houp, supra*, 462 F.2d at 1338; *cf. United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

In *Barker v. Wingo, supra*, a sixth amendment case, the Supreme Court held that where a defendant claims that he has been denied his constitutional right to a speedy trial, the court called

upon to decide the question must do so by balancing the reasons for the delay against the actual prejudice that the defendant has suffered on account of it, and the Court listed a number of factors that should be taken into consideration. 407 U.S. at 530–33, 92 S.Ct. 2182. A similar approach has been taken with respect to claims of pre-prosecution delay arising under the fifth amendment. *United States v. Jackson; United States v. Norton; United States v. Washington,* all *supra.*[1]

The cases heretofore cited, and others, clearly establish that before a defendant is entitled to have an indictment against him dismissed for delay whether pre-prosecution or post-prosecution, he must establish actual prejudice to his defense resulting from the delay. However, he must also show that the delay was unreasonable. Whether a given delay is unreasonable depends not only upon the length of the delay but also upon other factors including the reason for it. And in *United States v. Marion, supra,* relief was denied to the defendant who had shown neither that the government had acted in bad faith in delaying the prosecution nor that he had sustained any prejudice as a result of the delay. 404 U.S. at 325–26, 92 S.Ct. 455.

While in *Marion, Jackson, Norton, Washington, Houp, Golden* and *Terlikowski,* all *supra,* the possibility that pre-prosecution delay may involve a denial of due process was recognized, it is to be observed that in none of those cases was it found that the delay in question had in fact amounted to such a denial. And I am unable to find a denial of due process in the instant case.

The district court found in part that the defendant was denied due process because the government was guilty of "culpable negligence" and because the

delay in the return of the indictment had prejudiced the defendant. The majority of this court concludes that those findings were not clearly erroneous and affirms the action of the district court. As indicated, I disagree.

I am troubled by the finding of prejudice. It seems that the district court may have merely assumed the truth of Barket's allegations that six possible witnesses who are now dead would have materially aided the defense. No satisfactory showing was made as to the substance of their testimony or as to whether other similar evidence was available or indeed as to when the decedents died.

But prejudice conceded, my position in a case of this kind is that pre-prosecution delay does not amount to a denial of due process absent a showing of bad faith or improper motive on the part of the government in delaying the prosecution, or a showing of detrimental reliance by a putative defendant on the initial decision of the government not to prosecute. I see neither of those things in this case.

There is no suggestion here that officials in the Department of Justice or the United States Attorney intentionally delayed the institution of the proceedings against the defendant for the purpose of prejudicing his defense or of gaining a tactical advantage over him. It seems that in 1972 the government after having lost some cases similar to this one decided not to prosecute a number of other cases, including that of the defendant, and that later the United States Attorney came into possession of what appeared to him to be evidence justifying prosecution and the Department changed its mind as far as the defendant was concerned. I see nothing invidious in this change of position, and the defendant certainly had no vested right in

---

1. It is to be remembered, however, that the fifth amendment protection against pre-prosecution delay has not been held to be coextensive with the protection of the sixth amendment against post-indictment delay. The situation of one who has been arrested and held to answer simply does not compare with that of one who has not yet risked restraint of liberty or official accusation. *United States v. Marion, supra,* at 321, 92 S.Ct. 455.

the original decision not to prosecute.[2] There is nothing unusual or sinister about a prosecutive agency changing its mind about a particular prosecution with the change being based on a new legal theory or newly discovered evidence.

Nor is there anything in this record to indicate that the defendant changed his position in any way in reliance upon the initial determination of the Department not to proceed against him criminally, if, indeed, the defendant knew of that determination.

In view of the size of the Department of Justice and the complexity of its organization and operations, and in view of the public interest in having the criminal laws enforced irrespective of the dilatoriness or inefficiency of the prosecutive bureaucracy, I have a great deal of trouble in finding that the government attorneys handling this matter were guilty of negligence regardless of whether or not that term is preceded by the adjective or epithet "culpable."

But even assuming that the Department and the United States Attorney were to some extent negligent in not indicting the defendant prior to 1974 and that in the meantime some of his prospective witnesses died or forgot important facts and details, I do not think that the due process clause of the fifth amendment called for a dismissal of the indictment.

I would reverse and remand for trial.

---

**2.** *Cf. Hoffa v. United States,* 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), cited with approval in *United States v. Marion, supra,* 404 U.S. at 325, 92 S.Ct. 455, n. 18, for the proposition that there is no constitutional right to be arrested.