UNITED STATES of America, Appellant,

v.

Eugene LOVASCO, Sr., Appellee.

No. 75–1852.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1976.

Decided Feb. 23, 1976.

Rehearing and Rehearing En Banc Denied April 21, 1976.

**60**

Donald J. Stohr, U. S. Atty., Richard E. Coughlin, Asst. U. S. Atty., St. Louis, Mo., for appellant.

Louis Gilden, St. Louis, Mo., for appellee.

Before CLARK, Associate Justice, Retired,* and BRIGHT and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

The grand jury on March 6, 1975, indicted Eugene Lovasco, Sr., charging him with three counts of unlawful possession of handguns stolen from the mail, and one count of engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1) and 924(a). These indictments referred to eight handguns which Lovasco had possessed and then sold to a third party between July 25, 1973 and August 31, 1973, some 17 months before the indictment.

Prior to trial, Lovasco moved to dismiss the indictments because of prejudicial preindictment delay. The alleged offenses had been investigated by the postal inspector of the St. Louis, Missouri, post office department, between August 20, 1973, and October 2, 1973. During the investigation on September 26, 1973, a postal inspector interviewed Lovasco in the presence of his attorney and obtained a statement from him. The post office department sent a report of alleged offenses to the United States Attorney for the Eastern District of Missouri on October 2, 1973.

District Court Judge John K. Regan dismissed all counts of the indictment, noting that although the Government had possessed all of the information relating to the defendant's alleged commission of the offenses on or about October 2, 1973, it did not charge the defendant or present the matter to a grand jury until more than 17 months thereafter. The court concluded:

> As a result of the delay defendant has been prejudiced by reason of the death of Tom Stewart, a material witness on his behalf. The Government's delay has not been explained or justified and we find it unnecessary and unreasonable.[1]

Upon our review of the record, we affirm the district court's dismissal of counts one, two, and three (alleging unlawful possession of stolen handguns), but direct reinstatement of count four (dealing in firearms without a license).

In testimony supporting his motion for dismissal, Mr. Lovasco repeated in substance the statement that he had earlier made to postal authorities to the effect that after visiting his son, Eugene, Jr., a mail handler at the Clark Avenue mail facility of the Terminal Railroad Association, he found a sack in the back of his car containing Browning automatic pistols. Lovasco added to that earlier statement by testifying that he had received two or three of the automatic pistols from one Tom Stewart, now deceased, who had worked for the Terminal Railroad as did Lovasco. Lovasco stated that he had not mentioned to the postal inspector investigating the case that he received some of the guns from Stewart

---

* TOM C. CLARK, Associate Justice, Retired, United States Supreme Court, sitting by designation.

1. The court's order is unpublished.

because as he described Stewart, "this guy was a bad tomato, he was liable to take a shot at me if I told him."

Some other information relative to Mr. Lovasco having sold a gun to another party surfaced in March of 1975, but that additional evidence does not seem to be embodied in any of the counts of the indictment. The postal inspector in charge of the case testified that he would have recommended the prosecution of this case and presentation of the evidence to the grand jury based on the information contained in the report submitted to the United States Attorney on October 2, 1973.

The prosecuting attorney has indicated that the Government theorized that the guns in question had come from the accused's son, who worked at the post office, but no charges have been made against him. At oral argument the prosecutor indicated the delay in the prosecution resulted from awaiting results of further investigation which might have implicated the person or persons who may have stolen the mailed matter.

We discussed preindictment delay in *United States v. Jackson,* 504 F.2d 337 (8th Cir. 1974), where we noted:

The Supreme Court in *Marion* [*United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)] recognized that pre-prosecution delay on the part of the government may violate a defendant's right to due process of law under the Fifth Amendment, and specifically declared that the statute of limitations does not fully define the rights of criminal suspects to be speedily accused. [*Id.* at 339.]

We added:

Our court, too, has often recognized that an unreasonable pre-accusation delay, coupled with prejudice to the defendant, may violate the Fifth Amendment, although we have yet to hold in any case that the prejudice was sufficient to require reversal. [*Id.* at 339 (citations omitted).]

Here, the trial court found the two basic elements essential to a claim of preindictment delay—unreasonable delay and prejudice to one's ability to defend against the charges. Although the essential facts underlying the indictment were known to the Government and to the prosecutor on October 2, 1973, no prosecution was initiated for 17 months. No reason existed for the delay except a hope on the part of the Government that others might be discovered who may have participated in the theft of firearms from the United States mails. The postal inspector had submitted a prompt report to the prosecutor with documentations of facts uncovered in the investigation. The district court deemed the delay unjustified, unnecessary, and unreasonable. That determination is supported by the evidence.

Lovasco testified that one Tom Stewart, who is now dead, sold him two of the firearms in question, and contends that were Stewart's testimony available it would support his claim that he did not know that the guns were stolen from the United States mails. In support of the motion to dismiss, Lovasco testified that Stewart died about six months prior to April 25, 1975. The Government concedes that Tom Stewart did exist and was employed by the Terminal Railroad. While the Government does not concede Stewart's death, it does not claim to have any evidence that he is now alive. Thus, the record also supports the district court's finding that the defendant has been prejudiced by reason of the death of Tom Stewart, a material witness on his behalf.

These findings of unreasonable delay and prejudice support the dismissal of counts one, two, and three of the indictment, but do not support dismissal of count four.

The fourth count charges Lovasco with dealing in firearms without a license as required by federal law. According to the investigation report, one Joe Boaz, Jr., stated that he had purchased eight pistols from Eugene Lovasco, Sr. on various dates between July 26, and September 11, 1973. In the statement given to the postal inspector, Lovasco admitted selling four or five pistols

that he had found in his car to Joe Boaz, Jr., but denied selling any other pistols to him. In his testimony before the district court on the motion to dismiss, the accused admitted finding a bag of pistols in the car and obtaining two other pistols from Tom Stewart. He added, "and Joe Boaz bought them over the telephone."

■ As we understand it, the fourth count relates solely to the transaction between Lovasco and Boaz. Since Tom Stewart was not a participant in that transaction and the question of whether the guns were stolen is irrelevant to the charge, it is difficult to perceive any prejudice to Lovasco's defense because of the death of Stewart. Significantly, counsel for appellee conceded at the hearing before the district court that the fourth count is independent of the other three counts. While counsel contended the fourth count could not stand on its own, that issue is not before us.

Accordingly, we sustain the dismissal of counts one, two, and three of the indictment, but direct the reinstatement of count four.

HENLEY, Circuit Judge (dissenting).

I agree with the majority that the fourth count of the indictment against the defendant should be reinstated. I respectfully dissent from the view of the majority that the order of the district court should be affirmed to the extent that it dismissed the first three counts of the indictment.

With respect to those counts, my view is that the action of the district court in dismissing the first three counts in advance of trial on the theory that the defendant suffered prejudice as a result of an unreasonable preindictment delay on the part of the government was clearly erroneous. In my opinion the district court at most should have done no more than reserve ruling on the motion and let the case proceed to trial. Had the defendant been acquitted, the question of preindictment delay would not have survived; had he been convicted the question might well have been presented in

clearer focus post trial than that in which it was presented in advance of trial and on the defendant's motion to dismiss.

Very recently in *United States v. Barket,* 530 F.2d 189 (8th Cir. 1976), a majority of a panel of this court affirmed an order of the United States District Court for the Western District of Missouri dismissing for preindictment delay an indictment returned in 1974 charging that in 1970 the defendant, a bank official, unlawfully made a contribution of bank funds to a political campaign and that in so doing he misapplied the funds of the bank. The indictment in that case was returned within the applicable statutory period of limitations which at that time was five years.

As a member of the panel, I dissented in that case and filed an opinion setting out my general views as to the proper application to individual cases of the general rule laid down in *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). I see no occasion to restate those views here except to repeat and emphasize my opinion that the fifth amendment protection against preindictment or preprosecution delays is not coextensive with the "speedy trial" protection accorded by the sixth amendment, and again call attention to the fact that the subject of a criminal investigation has no constitutional right to immediate prosecution or arrest. *See Hoffa v. United States,* 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), cited with approval in *United States v. Marion, supra,* 404 U.S. at 325, 92 S.Ct. 455.

Here, as in *Barket,* there is no evidence that the delay of the government in obtaining the indictment against the defendant, which delay the district court found was unreasonable, was motivated by any sinister desire on the part of the investigating officers or the United States Attorney to gain tactical advantage over the defendant by means of the delay or to prejudice him in his defense. Nor is there any evidence of any detrimental reliance by the defendant on the fact that although a statement was taken from the defendant in September,

1973 and a report to the United States Attorney was made by postal authorities in October of that year, defendant was not indicted until March, 1975.

Further, the delay involved in this case was much shorter than the delay involved in *Barket,* and the offense for which the defendant was ultimately indicted arguably may be considered as more serious and involving more moral turpitude than the offenses charged against Mr. Barket.

Apart from those considerations, I think that the district court's finding that the defendant sustained substantial prejudice as the result of the death of Tom Stewart was purely speculative and for that reason was clearly erroneous.

The record and the briefs disclose that the indictment was returned on March 6, 1975; on March 18, 1975 defendant filed his motion to dismiss; and a hearing was held on the motion on April 25, 1975. In his brief counsel for defendant states that his client testified that Stewart had died about six months prior to the hearing. If so, Stewart had ceased to be a source of danger to the defendant, if he ever was, when the motion was filed. Nevertheless, no mention of Stewart or his "lost testimony" is made in the motion, and there is no allegation of specific prejudice in the motion except the assertion that the defendant had suffered "anxiety and concern" since his statement had been taken in 1973. The name of Stewart seems to have come up for the first time when the defendant testified in support of his motion. In the circumstances, one may suspect that the claim of prejudice based on the death of Stewart was nothing but a fabrication, and that had Stewart been alive the defendant could just as well have relied on the recent death of any other of his acquaintances, claiming that he had innocently acquired the pistols from that acquaintance.

Defendant made no specific showing as to what he would have proved by Stewart had the latter been available, and in fact defendant made no showing that Stewart would have taken the stand in defendant's behalf had Stewart been alive and subject to subpoena.

Had Stewart taken the stand and undertaken to exculpate the defendant, he doubtless would have been required to explain his own connection, if any, with the pistols in question, and that connection may well have been highly culpable. The defendant could not have compelled Stewart to incriminate himself, and it is unrealistic to believe that Stewart would have done so voluntarily simply to aid or accommodate the defendant.

If the defendant had been put to trial, it would have been open to him to contend before the jury that he had acquired the pistols from Stewart without any guilty knowledge and to urge upon the jury the fact that Stewart's death had deprived defendant of the benefit of Stewart's testimony. As it is, the defendant simply goes free without trial.

When a district judge sustains in advance of trial a motion to dismiss an indictment because of prejudicial pre-indictment delay, he takes a stringent measure. And if such a motion is improvidently granted, it adversely affects the public interest in the enforcement of the criminal law, and it also encourages the filing of meritless motions, similarly based, by other defendants. The dismissing of indictments on account of the government's delay in obtaining them is not an acceptable solution to the problem of crowded criminal calendars, and in my opinion motions such as that of the defendant should not be granted in advance of trial except in clear cases.