UNITED STATES of America, Appellant,

v.

Neil T. NAFTALIN, Appellee.

No. 75–1692.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1975.

Decided March 30, 1976.

As Modified May 27, 1976.
Rehearing and Rehearing En Banc Denied June 21, 1976.

Thorwald H. Anderson, Asst. U. S. Atty., Minneapolis, Minn., for appellant; Robert G. Renner, U. S. Atty., Minneapolis, Minn., on brief.

Frank J. Walz, O'Connor & Hannan, Minneapolis, Minn., for appellee; Joe A. Walters, Minneapolis, Minn., on brief.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

This is an appeal by the United States from an order entered by District Judge Earl R. Larson dismissing an indictment against Neil T. Naftalin. The order of dismissal, entered August 8, 1975, was based upon a finding of outrageous delay in bringing criminal charges. The dismissed indictment charged eight counts of securities fraud perpetrated during the summer and fall of 1969.

Naftalin's alleged fraud is explained in detail in a prior opinion of this court. *Naftalin & Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 469 F.2d 1166 (8th Cir.1972). Basically, Naftalin, through his corporation, is accused of fraudulently selling stock which he did not own.[1] When he felt that a particular stock had reached a peak market price, he would place orders to sell shares of that stock with broker/dealers to whom he was known. Because of his reputation in the securities industry, he was able to delay actual delivery of the stock for some time. If things worked as he planned, the market price would decline after his sale. He would then purchase the stock at the reduced price to cover his previous sale. Unfortunately for Naftalin, in 1969, he made major sales of stock which promptly increased sharply in price. He was unable to cover his obligations and realized that his scheme would inevitably be exposed in short order.

On October 27, 1969, Naftalin held a meeting with broker/dealers who were victims of his scheme. He explained his system of operation to them and informed them that he would not be able to honor his commitments. On October 29, 1969, he met with the Securities and Exchange Commission (SEC) in their Washington, D. C. offices. The Chicago regional director was present at that meeting. During the meeting he outlined his activities and indicated that he was not going to be able to cover his obligations.

The information which Naftalin gave to the SEC at the October 29 meeting was sufficiently detailed that on the same day the SEC was able to draft a complaint for preliminary and permanent injunctive relief restraining Naftalin from further violations of the securities laws. On November 4, the complaint was filed and Naftalin consented to the preliminary injunction.

As of November 25, the SEC began further investigation of the situation. It sent questionnaires to the various broker/dealers who Naftalin had identified as being involved and received written responses.

---

1. Naftalin's scheme, known colloquially as "free riding" must be distinguished from a legitimate "short sale," in which the purchaser is aware that the seller does not presently own the stock sold for future delivery. The indictment charges that Naftalin expressly and fraudulently claimed to have actual present ownership.

Naftalin was president and 80 percent shareholder in Naftalin & Co. During the entire period in question, Naftalin & Co. "operated as a one-man business with Neil Naftalin conducting all of its affairs." *Naftalin & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 469 F.2d at 1170–71. For purposes of this opinion, it is generally unnecessary to distinguish between Naftalin and his company.

Also, Naftalin's books were audited and other channels of investigation were pursued. The district court found that as of December 1969, the SEC knew all of the essential facts underlying the eight count indictment which was finally returned against Naftalin. The Government does not seriously contest this finding and we accept it.

During the period between Naftalin's initial confession and the bringing of the criminal indictment, there were four major areas of activity in which the SEC participated to a greater or lesser degree. These areas of activity, in order of the date of initiation, were:

1) SEC proceedings for a preliminary and permanent injunction.

2) SEC initiated receivership of the assets of Naftalin & Co. including resolution of a contempt citation arising from Naftalin's refusal to surrender $590,000 in United States Bonds purchased with proceeds of his securities dealings. *See SEC v. Naftalin,* 460 F.2d 471 (8th Cir. 1972).

3) Involuntary bankruptcy proceedings brought by two groups of broker/dealers victimized by Naftalin. *See Naftalin & Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra; In re Naftalin & Co., Inc.,* 333 F.Supp. 136 (D.Minn.1971); *In re Naftalin & Co., Inc.,* 315 F.Supp. 463 (D.Minn.1970).

4) SEC administrative proceedings brought for the purpose of barring Naftalin from the securities industry for life.

The administrative proceedings culminated on June 19, 1973, in an administrative order barring Naftalin from the securities industry until such time as he might be reinstated, consistent with the public interest. Other civil proceedings also had been substantially concluded by that date.

Unfortunately, the SEC did not refer the matter to the Justice Department for prosecution until March 8, 1974, some nine months later, and an indictment was not returned until April 11, 1974. Thus, the indictment was within the five-year period set by the statute of limitations, 18 U.S.C. § 3282, by only a few months, and followed by nearly four and one-half years the time at which the Government possessed essentially all of the facts upon which the indictment was based. Had the prosecutor not acted with commendable dispatch, this entire prosecution would have been stillborn.

The district court found that this four and one-half year delay between the time of full governmental knowledge and the bringing of a criminal indictment was outrageous. Although unable to identify any demonstrable prejudice to Naftalin's defense, the court, relying upon language from a footnote in *United States v. Jackson,* 504 F.2d 337, 339 n. 2 (8th Cir.1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975), found the delay sufficiently aggravated to be considered presumptively prejudicial. As a result, the court held that due process precluded the Government from proceeding with the prosecution.

The Government contends that most of this delay was reasonable, although at oral argument counsel conceded that at least nine months of the delay were unnecessary. The Government further argues that in the pre-accusatory context, delay within the statute of limitations will not bar a criminal prosecution unless either there is specific demonstrable prejudice to the defendant's ability to defend himself or the Government's conduct was intentional and for the purpose of gaining a tactical advantage over the defendant.

This court has recently discussed at some length the standards for assessing claims of pre-accusatory delay. *See United States v. Barket,* 530 F.2d 189 (8th Cir. 1976). There we said the determination of such a claim

involves "a process of balancing the reasonableness of the delay against any resultant prejudice to the defendant." The test for determining prejudicial impact is whether the delay "has impaired the defendant's ability to defend himself," and the trial court's finding on the prejudice issue must stand unless clearly erroneous. [Slip op. at 193 (emphasis added, citations omitted).]

The classic type of prejudice is the death or unavailability of a material witness. In *Barket,* the court found that during the 47-month delay, "six material witnesses had died and others had faded memories of events crucial to Barket's defense." *Id.* at 5; *cf. United States v. Lovasco,* 532 F.2d 59, No. 75–1852 (8th Cir., Feb. 23, 1976). Although Naftalin makes a claim that an important witness has died, the district court found that, assuming the relevance of the alleged witness' testimony, his dealings with Naftalin could be established from his and Naftalin's records and that his death therefore did not cause substantial prejudice.

■ Undeniably, as the delay increases, the specificity with which prejudice must appear, diminishes. Particularly in cases hinging on identification by one or few eyewitnesses, delay raises a "lurking danger of misidentification." *Robinson v. United States,* 148 U.S.App.D.C. 58, 459 F.2d 847, 853 (1972). Also, the inability of the accused to recall his conduct on an unremarkable day in the distant past may bar prosecution in some cases.[2] For example,

> [t]he people [in the drug subculture] simply do not have desk pads and social calendars to assist them in determining where they were at a particular time many months before. [*Powell v. United States,* 122 U.S.App.D.C. 397, 352 F.2d 705, 711 (1965), *quoted in Robinson v. United States, supra,* 459 F.2d at 852 n. 31.]

Here the situation is quite different. The Government correctly points out that the securities industry is characterized by records kept in duplicate and triplicate. As the district court noted, because of these extensive records, the memories of witnesses are not as crucial as in other types of cases. Further, the early initiation of civil and administrative proceedings in this case served to draw early attention to Naftalin's affairs. Both the SEC and Naftalin con-

tacted witnesses and recorded their statements at an early date. Thus, it is unlikely that Naftalin's defense will be genuinely hindered by faded memories.

■ The district court did find two areas of specific prejudice. The court found that Naftalin

> has been inhibited in offering mitigating testimony at the administrative proceedings. He has had to live for four and one-half years after admission of wrongdoing under uncertainty as to whether he would be criminally prosecuted.

However, only prejudice to an accused's ability to defend against the delayed indictment is relevant here. As the Government correctly points out, if Naftalin was denied due process in the administrative proceeding, that is where the issue should have been raised and decided. And while the burden of uncertainty is an important constitutional consideration in determining whether the sixth amendment right to a speedy trial has been impaired by an undue delay between accusation and trial, it has not been held to be prejudice of constitutional magnitude in assessing pre-accusatory delay, though it may properly be considered in assessing reasonableness. *See United States v. Marion,* 404 U.S. 307, 320–22, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 478 (1971). Thus, the only prejudice which the district court was able to identify after carefully examining the record is insufficient to invoke the due process guarantee against prejudicial delay.

It is true that in *United States v. Jackson, supra,* we did suggest in a footnote that in certain extreme cases prejudice might be presumed. Our precise language was as follows:

> [W]e hesitate to say that prejudice could never be presumed in an outrageous case of unjustified delay. We agree that, at least where the government is not engaging in intentional delay in order to gain a

---

**2.** A very recent District of Columbia Circuit case suggests that prejudice may sometimes be found where extreme delay raises a general likelihood of inaccuracy in the Government's case. *United States v. Jones,* 173 U.S.App.D.C. 280, 524 F.2d 834, 18 Cr.L. 2347 (1975). This seems to be a more general formulation of the court's concern about misidentification just discussed. We perceive no such likelihood of inaccuracy here.

tactical advantage over the accused, the defendant must affirmatively demonstrate prejudice. [504 F.2d at 339 n. 2 (citations omitted).]

It is clear that this language was not intended to elevate the subjective term "outrageous" to the status of an independent test. Instead, as the cases cited make clear, the term "outrageous" was employed to describe deliberate and ill-motivated attempts by the Government to weaken the accused's defense by long delay. *See United States v. Golden,* 436 F.2d 941, 945 (8th Cir.), *cert. denied,* 404 U.S. 910, 92 S.Ct. 236, 30 L.Ed.2d 183 (1971); *Terlikowski v. United States,* 379 F.2d 501, 505 (8th Cir.), *cert. denied,* 389 U.S. 1008, 88 S.Ct. 569, 19 L.Ed.2d 604 (1967).

■ We have carefully reviewed the history of this case, and while it is clear that the wheels of government ground with agonizing slowness, we cannot say that the Government engaged in any intentional ill-motivated delay for the purpose of weakening Naftalin's defense. The district court found only that

the S.E.C.'s customary enforcement policy is to proceed consecutively from injunctive action, to administrative proceedings, to criminal prosecution [and] that in the Naftalin matter initiation of the administrative proceedings was not pursued with any vigor during 1970 and the first eight months of 1971 because of involuntary bankruptcy proceedings pending against Naftalin & Company * * *.

\* \* \* \* \* \*

However innocent or inadvertent the delay in bringing this prosecution may have been, it was clearly without justification.

■ The SEC's practice of exhausting civil and administrative proceedings before recommending criminal prosecution has been recognized by other courts and held not *per se* unreasonable. *See United States v. Benson,* 487 F.2d 978 (3d Cir.1973); *United States v. Dukow,* 453 F.2d 1328 (3d Cir.), *cert. denied,* 406 U.S. 945, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972). The securities laws are complex and easily violated. The public

interest may not always call for criminal prosecution, particularly where effective civil and administrative remedies have been obtained. For that reason Congress appears to have sanctioned the completion of civil remedies by the SEC after which it may transmit evidence which it has discovered to the Attorney General for criminal prosecution at his discretion. *See* 15 U.S.C. § 77t(b); *see generally SEC v. Collier & Co.,* 76 F.2d 939 (2d Cir.1939). Certainly, there is little to be said for forcing the SEC into hastily referring incomplete files to the Attorney General. If referrals are postponed until the civil and administrative proceedings are complete, in many cases the Attorney General may be able to determine that the noncriminal proceedings have provided adequate sanctions and therefore that the public interest does not require a criminal prosecution. *Cf. United States v. Benson, supra,* 487 F.2d at 986.

In sum, we conclude that this record discloses no basis for finding that Naftalin will be prejudiced in making his defense at trial. Further, as we have noted, much of the delay was reasonable and none was intended to weaken Naftalin's defense. Therefore, the district court's order of dismissal is hereby reversed and the case is remanded with instructions to the district court to reinstate the indictment.

HENLEY, Circuit Judge (concurring):

Since it is clear both that the Government has engaged in no ill-motivated delay for the purpose of weakening the defense and that the record discloses no basis for finding that the defendant will be prejudiced in making his defense, on authority of *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), without more I concur in the result reached by the court.