**UNITED STATES of America, Appellant,**

v.

**Noel QUINN, Appellee.**

**UNITED STATES of America, Appellant,**

v.

**Lee WILSON, Appellee.**

**Nos. 75–1850, 75–1851.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1976.

Decided July 27, 1976.

Rehearing and Rehearing En Banc Denied Aug. 18, 1976.

358

Richard A. Heidenry, Asst. U.S. Atty., St. Louis, Mo., for appellant; Donald J. Stohr (former U.S. Atty., St. Louis, Mo., on brief.

James E. Reeves, Ward & Reeves, Caruthersville, Mo., for appellants.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

■ The United States appeals from two orders entered by the District Court dismissing the actions against appellees Noel Quinn and Lee Wilson because of preindictment delay. Jurisdiction is proper in this Court under 18 U.S.C. § 3731.[1] For the reasons stated below, we reverse the orders of the District Court.

Appellee Quinn was charged in a ten count indictment with selling firearms on five occasions without maintaining records as required by law in violation of 18 U.S.C. § 922(b)(5). The remaining five counts charged that Quinn had knowingly sold the firearms to nonresidents of the State of Missouri in violation of 18 U.S.C. § 922(b)(3). The sales were alleged to have occurred between May 1, 1974, and June 4, 1974. Subsequent undercover investigation led to the issuance of a search warrant to search Quinn's barber shop, which was executed on September 17, 1974. The government contends that its active field investigation continued until November 6, 1974, and that, after acquisition of additional documentation, the investigative report was not filed with the United States Attorney's office until December 12, 1974. The indictment was then filed on August 8, 1975, and Quinn was arrested on August 14, 1975.

Appellee Wilson was charged in a single count indictment with dealing in firearms without a license in violation of 18 U.S.C. §§ 922(a)(1) and 924(a). The indictment was based on four alleged sales of firearms to undercover agents of the Bureau of Alcohol, Tobacco and Firearms in the Caruthersville, Missouri, area between April 1, 1974, and July 16, 1974. After attempts to trace the weapons were made and after further investigations were made with respect to other illegal firearms activity in the area,

the formal case report was filed with the United States Attorney's office on March 10, 1975. The indictment was filed on August 8, 1975, and Wilson was then arrested on August 18, 1975.

At the suggestion of the District Court, the appellees made pretrial motions to dismiss the indictments for preindictment delay. A combined hearing on the motions was held on September 26, 1975. At that hearing, Quinn, Wilson, and Agent Joseph A. Patterson of the Bureau testified. Quinn, a barber and licensed gun dealer, testified that he kept no notebook or diary of dates and transactions other than the firearm records required by the government and had no means or ability to reconstruct the events of the dates of the alleged offenses. He stated that he could not recall any specific events which occurred in May or June of 1974, nor the identity of the persons who may have come into his place of business during that period. Finally, he testified that he had, since the execution of the search warrant, been living under stress and had been unable properly to carry on his business. Wilson, a laborer, testified that he had a fifth grade education and kept no notebook, diary, or other record from which he could reconstruct his activities during the time period in question. He stated that he had a short memory and could not recall the events on the dates of the alleged transactions.

Agent Patterson testified that he supervised the undercover investigations concerning Quinn and Wilson. He stated that the government employed a paid informant, one James Green, to assist in the investigations, but that no other such informants were used. He testified that Green's role in the investigation was solely to introduce the undercover agents who purchased the firearms to Quinn and Wilson. In response to a question as to Green's whereabouts at the

1. 18 U.S.C. § 3731 authorizes appeals by the government in a criminal case from district court orders dismissing an indictment or information except "where the double jeopardy clause of the United States Constitution prohibits future prosecution." The dismissal of the indictments in these cases would not prevent further prosecution, and thus the government may properly appeal. Cf. *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

time of the hearing, Agent Patterson testified that he did not know and that he had not been in contact with Green for approximately two months.

After the conclusion of the hearing, the District Court entered two orders dismissing the indictments. In Quinn's case, it stated:

In September, 1974, a search warrant was issued and returned, the record showing that defendant's records of firearms transactions and three firearms were seized. If investigation was theretofore continuing, it ceased almost a year before the indictment was returned. Defendant has been prejudiced by the delay by reason of the present unavailability of the government's informant and in other respects. We find the delay to be wholly unnecessary and unreasonable.

In Wilson's case, it stated:

It appears that the government bases its charge on four alleged transactions with undercover agents, the first on April 1, 1974 and the last on July 16, 1974. There being no evidence of a bona fide continuing investigation which might conceivably justify the thirteen months delay in presenting the charge to a grand jury, it is our view that the delay was unreasonable. Defendant has been prejudiced not only by his inability to reconstruct his activities on the dates in question and obtain exculpatory evidence but by the present unavailability to the defense of James Green, the alleged government informant.

Until very recently this Court, while recognizing that unreasonable preindictment delay coupled with prejudice to a defendant may violate the Fifth Amendment Due Process Clause, had not held in any

case that the prejudice was sufficient to require dismissal. *See United States v. Librach*, 520 F.2d 550, 555 (8th Cir. 1975); *United States v. Jackson*, 504 F.2d 337, 339 n. 1 (8th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975). The test which we have applied has been one of balancing the reasonableness of the delay against the resultant prejudice to the accused, if any. *United States v. Jackson, supra*, 504 F.2d at 339. In two recent cases, we have held that the demonstrated prejudice to the defendant outweighed any justification for delay in initiating prosecution and on this basis have affirmed the judgment of the district court dismissing the indictment for prejudicial delay. *See United States v. Lovasco*, 532 F.2d 59 (8th Cir. 1976); *United States v. Barket*, 530 F.2d 189 (8th Cir. 1976). In each case, we held that the ability of the defendant to prepare his defense was materially hampered by an unreasonable delay in initiating prosecution.[2] It is apparent that this balancing process does not lend itself to a precise codification of circumstances constituting prejudicial preindictment delay and that each case must be carefully scrutinized on an ad hoc basis.

### I. *Circumstances of Delay*

■ The government contends that the reason for the delay in bringing the indictments was that other undercover activity in the area relating to illegal firearms would have been jeopardized had prosecutions been immediately initiated following completion of the investigations of Quinn and Wilson. The government stated to the District Court that active undercover investigations of these defendants were completed by September, 1974; and Agent Patterson testified that the testing of the guns to

---

2. We specifically left unresolved whether the Supreme Court in *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971), laid down a two-fold requirement of "substantial prejudice to [the defendant's] rights to a fair trial" and "an intentional device to gain tactical advantage". Government misconduct or negligence becomes a factor in considering the nature and cause of the delay which must in turn be balanced against the

resulting prejudice to the defendant. We have recognized on the other hand that "at least where the government is not engaging in intentional delay in order to gain a tactical advantage over the accused, the defendant must affirmatively demonstrate prejudice." *United States v. Jackson*, 504 F.2d 337, 339 n. 2 (8th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975).

establish that they were in fact operable firearms had been completed by November, 1974. There was no showing in this record that further deferral of prosecution of these defendants was necessary to protect the identity of undercover agents then engaged in other continuing investigations. On the other hand, there was no showing that the delay was the result of an intentional effort on the part of the government to impair by such delay the defendants' ability to defend themselves. The question here is whether the government's delay of prosecution beyond the time needed to protect ongoing undercover investigations is, without other justification, unreasonable. Couched in these terms, the delay must be regarded as unreasonable, but the burden of proving substantial prejudice remained with the defendants. *See United States v. Jackson, supra,* 504 F.2d at 339 n. 2.

## II. *Prejudice to Defendants*

The District Court found that Quinn was "prejudiced by the delay by reason of the present unavailability of the government's informant and in other respects." It found that Wilson was "prejudiced not only by his inability to reconstruct his activities on the dates in question and obtain exculpatory evidence but by the present unavailability to the defense of James Green, the alleged government informant." For lack of further amplification, it is assumed that the "other respects" in which Quinn was found to have been prejudiced would be the same inability to reconstruct his activities that the District Court found in Wilson's case. These findings must be sustained unless clearly erroneous. *United States v. Barket, supra,* 530 F.2d at 193; *United States v. Jackson, supra,* 504 F.2d at 341.

3. In these appeals, the government asserts that Green is not unavailable and that the government is prepared to produce him upon demand. Standing alone, we would deem these representations outside the record to be insufficient to rebut a showing of prejudice.

4. The role of the informant Green is distinguishable from the role of the informant in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), wherein it was held

## A. *Unavailability of Informant Green*

We found prejudicial delay in *United States v. Barket, supra,* where because of a delay of 47 months the defendant was prejudiced by the loss of witnesses to the circumstances of the transaction either by death or inability to recall. In *United States v. Lovasco, supra,* we affirmed the dismissal of three of four counts and held the defendant to have been prejudiced by a delay of 17 months during which a material witness died who was the person from whom the defendant claimed to have received guns and who the defendant testified would have supported his claim that he did not know that the guns were stolen from the United States mails.

The factual circumstances of this case are substantially different. The record shows that the missing witness, James Green, only introduced the government agents who purchased the firearms to Quinn and Wilson. Agent Patterson testified at the hearing on the motion to dismiss that he did not know Green's whereabouts and that he had not been in contact with Green for approximately two months.[3] Neither defendant carried his burden of affirmatively showing prejudice from the absence of the informant. There was no intimation that the informant could supply any information which might constitute a defense or rebut any necessary element of the offense. The government, on the other hand, adequately carried its burden of showing that the informant would have no basis for supplying exculpatory information. *See United States v. Norton,* 504 F.2d 342, 345 (8th Cir. 1974), *cert. denied,* 419 U.S. 1113, 95 S.Ct. 790, 42 L.Ed.2d 811 (1975).[4] The requirement of "substantial

to have been reversible error to withhold the name and address of the informant. In *Roviaro,* the informant was a participant in and a material witness to the sale of narcotics. In this case, there is no evidence that Green did anything more than introduce the undercover agents to the defendants. It is not claimed that he was present at the time the guns were purchased. Moreover, and decisive of this question, the defendants apparently never made demands upon the government to produce the

prejudice" set forth in *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) requires more than a mere showing of the unavailability of *any* witness. The missing witness must be one who could have supplied *material* evidence for the defense. *See United States v. Naftalin,* 534 F.2d 770, No. 75–1692 (8th Cir. 1976); *United States v. Lovasco, supra,* 532 F.2d at 62.

### B. *Inability to Recall Events*

▆▆▆ Each defendant claimed prejudice resulting from an inability to recall the events which formed the basis for the charges against him. However, a "claim merely of general inability to reconstruct the events of the period in question is insufficient to establish the requisite prejudice for reversal based on denial of due process." *United States v. Atkins,* 487 F.2d 257, 259 (8th Cir. 1973).[5] *See also United States v. Emory,* 468 F.2d 1017, 1020 (8th Cir. 1972); *United States v. Golden,* 436 F.2d 941, 943 (8th Cir.), *cert. denied,* 404 U.S. 910, 92 S.Ct. 236, 30 L.Ed.2d 183 (1971). We do not exclude the possibility that an extended delay resulting from calculated and intentional tactics by the prosecution in an effort to impede the defense coupled with a resulting inability of the defendant to recall events may cause the balance to be struck in favor of the defendant on the issue of

prejudice; but this is not such a case. We have reviewed the testimony of Quinn given prior to the District Court's suggestion of the possibility of dismissal for preindictment delay at a hearing on a motion to suppress and find that he exhibited an ability to recall events surrounding the execution of the search warrant in September, 1974. While he was able to recall these events in some detail, he claimed that he could not recall events in the Spring of the same year. We think that such generalized contentions are insubstantial and speculative and as such are inadequate to satisfy Quinn's burden of affirmatively demonstrating prejudice.[6]

Wilson testified that he was able to recall the sale of two of the guns to the agents but denied any criminal intent or knowledge that the guns were stolen. His knowledge of certain of the events within the time frame weakens his claim of failing memory as a basis for substantial prejudice.

The District Court properly reflected its concern about the length of time which elapsed from the time the investigations had been completed until the initiation of prosecution. We conclude, however, that upon the record before us substantial prejudice has not been demonstrated and that the findings of the District Court in this regard are clearly erroneous.[7]

---

informant or to disclose his identity and address.

**5.** In a recent opinion of the Seventh Circuit, Judge Tone explained the rule in this way:
> A claim of faded memory, the veracity of which can rarely be satisfactorily tested, can be plausibly asserted in almost any criminal case in which the defendant is not charged within a few weeks, at most, after the crime. The possibility or likelihood of faded memory has not, however, in itself, been viewed as prejudice that requires dismissal of an indictment, despite delays of much longer than the four and one-half months shown here. * * Any person is likely to have difficulty in remembering what he was doing on a particular date during the hours when many, if not most, crimes are committed. If the limitation period for prosecution were measured by the length of the defendant's memory of routine events, few crimes could be prosecuted.
> * * *

* * * Here, however, the facts do not show unfairness. There was no evidence that the government intentionally delayed charging the defendant in order to gain a tactical advantage or for purposes of harassment.

*United States v. Cowsen,* 530 F.2d 734, 736–37 (7th Cir. 1976).

**6.** Recent cases involving similar or longer periods of delay have rejected claims of prejudice based upon inability to recall events. *See, e. g., United States v. Jones,* 173 U.S.App.D.C. 280, 289–90, 524 F.2d 834, 843–44 (1975) (13 month delay); *United States v. Foddrell,* 523 F.2d 86, 87–88 (2d Cir.), *cert. denied,* 423 U.S. 950, 96 S.Ct. 370, 46 L.Ed.2d 286 (1975) (15 month delay). Cf. *United States v. Finkelstein,* 526 F.2d 517, 526 (2d Cir. 1975) (four and one-half year delay).

**7.** The implementation of the Speedy Trial Act of 1975, 18 U.S.C. §§ 3161 *et seq.,* is not implicated in this case. We decline defense coun-

The judgments of dismissal are reversed and the cases are remanded to the District Court with instructions to reinstate the indictments in each case.

HEANEY, Circuit Judge (dissenting).

The federal courts have long possessed the inherent power, derived from the common law, to dismiss a case for want of prosecution. *United States v. Furey*, 514 F.2d 1098, 1103–1104 (2nd Cir. 1975); *United States v. McWilliams*, 82 U.S.App.D.C. 259, 163 F.2d 695, 696 (1947); *Ex Parte Altman*, 34 F.Supp. 106, 108 (S.D.Cal.1940); *District of Columbia v. Weams*, 208 A.2d 617 (D.C.Mun.App.1965). *See also* Note, Justice Overdue—Speedy Trial for the Potential Defendant, 5 Stan.L.Rev. 95, 104 (1952). This power is rooted in the court's supervisory authority over its own jurisdiction, and its exercise has traditionally been within the court's discretion. *United States v. Furey, supra* at 1103; *United States v. McWilliams, supra* at 696; *Ex Parte Altman, supra* at 108. As stated by Mr. Justice Frankfurter in *Nardone v. United States*, 308 U.S. 338, 341–342, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939):

> Dispatch in the trial of criminal causes is essential in bringing crime to book. * * * The civilized conduct of criminal trials cannot be confined within mechanical rules. It necessarily demands the authority of limited direction entrusted to the judge presiding in federal trials, including a well-established range of judicial discretion, subject to appropriate review on appeal, in ruling upon preliminary questions of fact. Such a system as ours must, within the limits here indicated, rely on the learning, good sense, fairness and courage of federal trial judges.

The discretionary authority is broadly described. The cited cases present factually the post-arrest situation, but the court's authority over its jurisdiction is not so limited. Reason dictates this conclusion. Judicial concern for the preservation of proof, the maximization of the deterrent effect of prosecution, the minimization of potential additional criminal conduct and the sure arrest of the individual apply no less forcefully to the pre-arrest situation. The Supreme Court has not indicated otherwise.

In the instant case, the sales with which Quinn was charged allegedly took place between May 1, 1974, and June 4, 1974. Those with which Wilson was charged allegedly occurred between April 1, 1974, and July 16, 1974. Although all active undercover investigations of these defendants were completed by September, 1974, indictments against them were not filed until August 8, 1975, more than a year after the commission of the alleged offenses. Under these circumstances, I do not believe that the dismissal of the indictments by the District Court constituted an abuse of discretion, and that, accordingly, the orders of the District Court should be affirmed.

Nothing is more important to the administration of criminal justice than the prompt arrest, indictment and trial of those accused of crimes. Of equal importance is the prompt completion of the appellate procedure. The reasons are twofold. The rights of an accused can be better protected and the interests of society can be better served.

Congress has addressed itself to a principal cause of delay in the Speedy Trial Act of 1974. *See* H.R.Rep. No. 93–1508, 4 U.S. Code Cong. & Admin.News, pp. 7402–7414, 7422–7426 (1974). This Court has addressed itself to appellate delay in its original and amended plans for expediting criminal appeals. We should not tie the hands of the District Court judges who attempt to deal with prosecutorial delay in the pre-arrest phase of criminal proceedings. *See* K. Da-

sel's invitation to draw from the Speedy Trial Act's requirements an analogy based upon the court's inherent power to dismiss an unduly delayed case to ensure the proper administration of justice. *See United States v. Furey*, 514 F.2d at 1099, 1102–04 (2d Cir. 1975). The District Court properly did not predicate his order upon this ground and we find nothing in the record by way of government misconduct which would warrant the application of such judicial power.

vis, *Discretionary Justice: A Preliminary Inquiry*, 209–214 (1969).

The negative power to withhold prosecution and to decide when and whether to initiate criminal proceedings is even greater than the affirmative power to prosecute because it is less protected against abuse. *See id.* at 22, 188–191. For the potential defendant, the consequences of a deliberate choice on the part of the government to delay the initiation of prosecution may be severe. *See* Note, The Right to a Speedy Trial, 20 Stan.L.Rev. 476, 489 (1968). The consequences to society of a deliberate delay in prosecution may be equally severe.